### LUIGI STORTI'S CASE.

Suffolk.    November 6, 1901. — November 13, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & LORING, JJ.

*Constitutional Law.    Ex post facto laws.*

On a petition for a writ of *habeas corpus*, it appeared, that the petitioner had been sentenced to death and had been committed to the warden of the State prison under St. 1898, c. 326, which required, that from the time of delivery to the warden until his execution or discharge a convict under sentence of death should be kept in a cell provided for the purpose, and that no person should be allowed access to him without an order of the court, except the officers of the prison, his counsel, his physician, a priest or minister of religion, if he should desire one, and the

members of his family.  This was amended by St. 1901, c. 520, § 1, so as to read:
"except the officers and employees of the prison, his counsel, and such physi-
cians, priest or minister of religion as the warden may approve, and the members
of his family, who are identified to the satisfaction of the warden," and then was
added:  "If the execution of the death sentence is respited by the governor, or
otherwise delayed by process of law, the convict may, in the discretion of the
warden, be confined in one of the cells in the solitary prison established by "
St. 1894, Res. c. 109.  It was contended that the warden had no authority to hold
the petitioner in custody except under St. 1901, c. 520, and that as against the peti-
tioner that statute was unconstitutional and void as *ex post facto.*  *Held,* that no
rights were conferred upon the prisoner by the statute of 1898, which related
to matters of prison discipline, containing merely restrictions on the warden and
directions for keeping the prisoner until execution, and that the persons men-
tioned as possibly having access to him were mentioned only by way of excep-
tion to the general exclusion of all others, the excepted persons remaining subject
to Pub. Sts. c. 221, §§ 33–35, requiring a permit and authorizing the warden to
exclude any one " when it appears that such admission would be injurious to the
best interests of the prison "; moreover, that no change was made by the statute
of 1901 in the persons who might be allowed access to the prisoner; and that the
statute of 1898 more clearly than that of 1901 permitted solitary confinement;
and that, if all the foregoing propositions were otherwise, it would not follow
that the petitioner should be discharged, as the mode of confinement is no part
of the punishment.

HOLMES, C. J.  This is a petition for the writ of *habeas
corpus* on the ground that the respondent has no authority to hold
the petitioner in custody except such as is derived from St.
1901, c. 520, and that as against the petitioner that statute is
unconstitutional and void.

The petitioner had been sentenced to death and had been
committed to the warden of the State prison under St. 1898,
c. 326.  That act required that from the time of delivery to the
warden until his execution or discharge a convict under sentence
of death should " be kept in a cell provided for the purpose, and
no person shall be allowed access to him without an order of the
court, except the officers of the prison, his counsel, his physician,
a priest or minister of religion, if he shall desire one, and the
members of his family."  Section 2.  This was amended by St.
1901, c. 520, § 1, so as to read : " except the officers and employees
of the prison, his counsel, and such physicians, priest or minister
of religion as the warden may approve, and the members of his
family, who are identified to the satisfaction of the warden," and
then was added :  "If the execution of the death sentence is re-
spited by the governor, or otherwise delayed by process of law,
the convict may, in the discretion of the warden, he confined in

one of the cells in the solitary prison established by " St. 1894.
Resolves, c. 109.

The prisoner's health was bad, and pending dilatory proceed-
ings by his counsel this statute was passed, obviously for the
relief of persons in his situation, and, as there was no other per-
son in his situation, it hardly would be too much to say for his
relief. It is admitted that it was a relief to him in its practical
working, but he relies upon the undoubted proposition that the
constitutionality of a law is to be judged by what it authorizes
and by what might happen under it, not alone by what actually
is done. It is said that by the later act rights of access con-
ferred by the earlier statute are cut down, and that solitary
confinement is or may be substituted for confinement which it is
said the earlier statute did not permit to be solitary. On these
grounds it is argued that the law is *ex post facto* and void.

We are unable to accede to any part of the argument for the
prisoner. If all the rest of it were sound, it would not follow
that he was entitled to his release, even apart from Pub. Sts.
c. 3, § 3, cl. 2, and the decisions under it: *Commonwealth* v.
*Desmond*, 123 Mass. 407 ; *Commonwealth* v. *Sullivan*, 150 Mass.
315. But we need not go so far. The mode of confinement is
no part of the punishment. That already has been decided.
*Storti* v. *Commonwealth*, 178 Mass. 549. If we assume that the
provision against *ex post facto* laws nevertheless might apply,
the answer to one of the objections is that however his actual
confinement under the act of 1898 be described, that act more
clearly than the later one permitted the confinement to be made
solitary. The mode in which the cell in the execution building
may have been constructed does not affect the meaning of the
statute, and the warden, after its construction, as before, was at
liberty to provide a cell in the State prison building in place of
that in the execution building, and to put the prisoner there.

The prison established under the resolve of 1894, although
referred to in the act of 1901 as " the solitary prison," was to be
a prison " for the separate confinement " of such convicts as the
warden should think expedient. It is evident that this refers to
a milder form of confinement, adverted to in *Medley, petitioner*,
134 U. S. 160, 168. It is found that the prison is used for that
milder form, and that the petitioner has not been in solitary con-

finement since he was placed there. But whether or not in fact prisoners within it sometimes are given solitary confinement, — whether or not this prisoner was, — still, so far as the provision of the later statute goes, it was intended and purported to be a mitigation of his lot. There is no doubt that it was so in fact.

Then as to the matter of access. The later statute makes no change, or but an infinitesimal one, from what was implied in the former act. It only makes the implications clear and explicit. The act of 1898 of course did not authorize any one to walk into the prison on his mere statement that he was a member of the prisoner's family. A person presenting himself as a member would have had to satisfy the warden that he was one. So the provision for " a priest or minister" did not require the admission of any 'priest or minister who asked to come in. It was enough to admit one whom the warden approved. We think that no different construction should be given to the words " his physician."

But apart from details it is a sufficient answer to the petition that neither of the provisions of the act of 1898 adverted to was intended to confer any rights upon the prisoner. They both were matters of prison.discipline, restrictions on the warden and directions for keeping the prisoner until execution, — nothing more. The persons mentioned as possibly having access to him are mentioned only by way of exception to the general exclusion of all others. The excepted persons remain subject to Pub. Sts. c. 221, §§ 33–35, requiring a permit and authorizing the warden to exclude any one, " when it appears that such admission would be injurious to the best interests of the prison."

*Petition denied.*

*W. M. Stockbridge & G. P. Wardner,* for the petitioner.

*A. W. De Goosh,* Assistant Attorney General, for the Commonwealth.