

# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN 11, TEXAS**

**JOHN BEN SHEPPERD**
ATTORNEY GENERAL

November 23, 1955

Dr. M. T. Harrington
Chancellor
Texas A. & M. College System
College Station, Texas

Opinion No. S-181

Re: Construction of H. B. 169,
53rd Legislature, 1953,
amending the "Feeding Stuff"
law, codified as Title 60,
V. C. S.

Dear Dr. Harrington:

Your letter requesting our opinion reads as follows:

"Certain sections of Title 60 of the Revised Civil Statutes and certain sections of the Penal Code under 'Feeding Stuffs' were amended by H. B. 169, Chapter 333, page 826, Acts of the Fifty-third Legislature.

"There is a question on the part of the Director of the Agricultural Experiment Station, who is charged with the supervision of the enforcement of the Pure Feed Law, as to the interpretation to be placed on, and, the means of enforcing the law under Articles 3881b and 3881d. Since the questions to be asked relate directly to these two Articles, the sequence in which they were adopted may shed some light on the legislative intent.

"H. B. 169 as finally passed amended Articles 3872 and 3875 and added four new Articles, namely 3881a, 3881b, 3881c, and 3881d to Title 60 of the Revised Civil Statutes and amended Articles 1489, 1492, and 1493 of the Penal Code under the title 'Feeding Stuffs.'

"House Committee Amendment No. 1 to H. B. 169 as introduced added three new sections, namely 3881a, which defines special-formula feed and custom milling or custom mixing; 3881b, which made non-applicable certain Articles of Title 60 of the Revised Civil Statutes and certain Articles of the Penal Code under 'Feeding Stuffs' where the tax had been paid on all ingredients supplied by the mixer or miller; and 3881c, which provided for a reporting system for persons selling special-formula feed or custom-mixed feed.

"After H. B. 169 passed the House, the Senate Committee offered two amendments to this bill. Senate Committee Amendment No. 1 was 3881d, which provided that "no portion or section of this act except those pertaining to taxes" should apply to those engaged in the milling or mixing of what is commonly known as custom mixing or special-formula mixing. Senate Committee Amendment No. 2 to H. B. 169 amended 3881c to exempt the seller from certain requirements when the consumer-buyer, by affidavit, states that he does not wish such process to continue.

"H. B. 169, with these amendments, passed the Senate, and the House concurred in the Senate amendments.

"Article 3881b provides "None of the provisions of the Revised Civil Statutes of Texas, 1925, Articles 3872, 3874, 3875, or 3877, as amended, nor the Penal Code of the State of Texas, 1925, Articles 1489, 1492, or 1493, shall apply to sales of special-formula feed, or custom milling or mixing, or any combination of such special-formula feed and custom milling or mixing (1) when a tax has been paid on all ingredients supplied by the person mixing, milling, or processing such feed, and (2) when all other ingredients are supplied by the consumer-buyer for his own use and not for resale.'

"If Article 3881b is applicable the only means by which it can be determined that the tax referred to in this Article has been paid is by the application of Article 3881c, yet, the penalty provision of this Article (1493Pc) is one of the provisions made non-operative by 3881b.

"Article 3881d provides 'It is specifically provided that no portion or Section of this Act, except those pertaining to taxes, shall apply to any milling or mixing process when all of the ingredients are delivered by the owner thereof or by his agent, or if the customer or his agent furnished a portion of the ingredients, and the miller, mixer, or processor adds other ingredients in amounts specified by such customer or his agent, or if the customer specifies the amounts and percentages in such mixture.'

"If Article 3881d is applicable, then the following Articles of Title 60 are non-operative, 3872, 3881a, 3881b, 3881c, and the following Acts of the Penal Code, 1489 and

1493. Even though Article 3875 and Article 1492 PC were amended by H. B. 169, they remain in effect because they pertain to taxes.

"In attempting to enforce the law since the adoption of H. B. 169, the Director of the Experiment Station has come to the conclusion that a clarification is needed for an efficient and fair enforcement. We, therefore, request your opinion as to the following:

"1. Is the above interpretation of 3881b correct? Does the Director have authority under 3880 to prescribe a means of reporting other than by invoices in order to determine the compliance with the taxing provisions of 3881b?

"2. Is the above interpretation of Article 3881d correct?

"3. Is there conflict between Articles 3881b and 3881d of the Revised Civil Statutes?

"4. If the answer to No. 3. is 'yes', does the Director of the Experiment Station have the authority, under Article 3880, to specify which of these articles shall be the controlling one in the enforcement of the law?

"5. If he does not have the authority, which of the two Articles will control?

"6. If neither controls, in your opinion, then how is the conflict to be resolved?

"7. If your answer to No. 3 is 'no', then do Article 3875, Revised Civil Statutes, and Article 1492 of the Penal Code apply to feeds sold as special-formula feeds or custom-mixed feeds as far as the collection of tax on feeding stuffs is concerned?"

It is elementary that a remedial statute should be construed so as to give effect to the legislative intent. This intent is to be ascertained from the entire act including statements made in the emergency clause. All parts of an act should be construed in pari materia and all parts of an act should be construed so as to give effect to all sections if possible. It is not to be presumed that the Legislature intended parts of the same act to be in conflict.

The Legislature in the emergency clause clearly stated the purpose of the act in the following language:

"The fact that the change in method of paying the
inspection tax authorized in Sections 1 and 2 of this Act
would simplify and facilitate the administration of the
Feeding Stuffs Law, and the fact that the law should be
clarified with respect to the status of custom mixing
and custom grinding of feed stuffs so as to exempt custom
mixing and grinding from the provisions of this Act, be-
cause the custom mixing and custom grinding of feed stuffs
for dairy men, livestock owners and other consumers of
feed stuffs, according to the specific directions and wishes
of the consumers, for the use of such consumers and not
for the purpose of resale should be in all things exempted,
and to be exempted from the necessity of placing tags or
labels upon such custom mixed feed stuff and should be
exempted from any additional tax upon such custom mixed
feed stuffs where the original ingredients in such custom
mixed feed stuffs have already had the tax paid on same,
. . ."

It is our opinion that Section 7 of House Bill 169 codified as Article 3881b, Vernon's Civil Statutes, and Section 8(a) codified as Article 3881d, V. C. S., are not in conflict with the expressed intent of the Legislature as set forth in the emergency clause or gleaned from reading the amendatory act from its four corners, and that said sections are not in conflict with each other. We will not attempt to answer each of your questions categorically, but will give our construction of the amendatory act and set forth our conclusions which we believe will enable you to enforce the original Act as well as the amendment in accordance with the legislative intent.

House Bill 169 purports to change the old law in respect to three things only:  (1) it changes the method of paying the inspection fee; (2) exempts certain provisions of the "Feeding Stuff" law to sales of special formula feed, or custom milling or mixing, as reflected by Section 7 of the Act which reads as follows:

"None of the provisions of the Revised Civil Statutes
of Texas, 1925, Articles 3872, 3874, 3875, or 3877, as
amended, nor the Penal Code of the State of Texas, 1925,
Articles 1489, 1491, 1492, or 1493, shall apply to sales
of special-formula feed, or custom milling or mixing, or
any combination of such special-formula feed and custom
milling or mixing (1) when a tax has been paid on all in-
gredients supplied by the person mixing, milling or

processing such feed and (2) when all other ingredients
are supplied by the consumer-buyer for his own use and
not for resale.*; and

(3) exempts certain milling and mixing processes from all the provisions
of House Bill 169 except those pertaining to taxes in certain instances as
reflected by Section 8(a) of the Act which reads as follows:

"It is specifically provided that no portion or Section
of this Act, except those pertaining to taxes, shall apply
to any milling or mixing process when all of the ingredients
are delivered by the owner thereof or by his agent, or if the
customer or his agent furnishes a portion of the ingredients,
and the miller, mixer, or processor adds other ingredients
in amounts specified by such customer or his agent, or if the
customer specifies the amounts and percentages in such mix-
ture."

Section 6 of the act defines the term "Special-formula feed" as
follows:

" 'Special-formula feed' means a mixture prepared
for and according to the instructions of a consumer-buyer
from ingredients which are or have been purchased wholly
from the person who manufactures, processes or mixes
such mixture."

and the term "custom milling" or "custom mixing" as follows:

" 'Custom milling,' 'custom mixing,' or like terms
mean the milling, mixing or processing where all the
ingredients are delivered by the owner thereof of by his
agent (which agent shall not be the miller, mixer or pro-
cessor or his employee) to the mill and are processed
according to his instructions."

Section 8 provides:

"Any person who sells special-formula feed or who
processes custom mixed or milled feed, or any combina-
tion of such feeds shall keep accurate records of all
transactions regarding such sales and services; and shall
give the consumer-buyer an invoice and shall forward a
duplicate copy of such invoice to the director of the Texas
Agricultural Experiment Station within ten (10) days after
the close of each quarter year ending with the last day of

November, February, May and August. The invoice shall
show the total amount of such exempt feeds, the amount of
each ingredient in the mixture, and the name of the con-
sumer-buyer to whom such feed is delivered. For the
purpose of determining the accuracy of such records, the
director of said experiment station may with the permis-
sion of the consumer-buyer collect samples from the
consumer-buyer named in the invoice and analyze such
samples to determine the conformity of the mixture to
the statement on the invoice. Provided, however, such
invoice shall not be required nor issued at any time after
the consumer-buyer furnishes his affidavit to the director
setting forth the fact that he does not want such invoice
issued, and the director shall not collect samples from the
consumer-buyer when such affidavit is so furnished, and
provided further that such affidavit may be revoked in
writing and filed with the director at any time. Failure to
comply with the requirements of this Section is punishable
in the same amount and manner as prescribed in Article
1493 of the Penal Code of the State of Texas."

From a reading of the entire act as a whole, as amended by
House Bill 169 we will set forth our conclusions as a summary.

## SUMMARY

(1) That all "feeding stuff" as designated in Article 3872, V.C.S.,
should be labeled or a statement should be furnished as provided for in said
Article, except as hereinafter set forth.

(2) That the manufacturer, importer, agent or seller of such
"feeding stuff" shall pay the inspection fee and tag same as provided in
Article 3875, except in those instances hereinafter stated.

(3) That the importer, manufacturer or party who causes it to
be sold shall file the statements and deposit the samples of the "feed stuff"
as provided in Article 3874, V. C. S., except in those instances hereinafter
set forth.

(4) That the analysis should be made as to all "feeding stuff" as
provided in Article 3877, except in those instances hereinafter stated.

(5) That the inspection tax is due upon all ingredients supplied
by the person mixing, milling or processing "feed stuff" even though the
mixture is a "Special-formula feed" or a "custom milling" or "custom

mixing" feed as defined in Article 3881a and even if sold to a buyer-consumer and is not purchased for re-sale.

(6) That an inspection tax is not due to sales of "special-formula feed" or custom milling or mixing or any combination of such special formula feed and custom milling or mixing as to the ingredients that are supplied by the consumer-buyer for his own use and not for re-sale. That an inspection tax is due in all other instances.

(7) That neither the provisions of Article 3872, 3874, 3875 or 3877 nor the corresponding provisions of the Penal Code, to-wit, Articles 1489, 1491, 1492, or 1493 apply to sales of special-formula feed or custom milling or mixing, or any combination of such special-formula feed and custom milling or mixing when a tax has been paid on all ingredients supplied by the person mixing, milling or processing such feed and all other ingredients are supplied by the consumer-buyer for his own use and not for re-sale.

(8) That all persons who sell special-formula feed or who process custom mixed or milled feed or any combination of such feeds shall keep the records and comply with the other provisions of Article 3881c, and that a failure to comply would subject such person to a fine of not exceeding $500.00 as provided in Article 1493 of the Penal Code.

(9) That the inspection tax is due on all milling or mixing processes even though all the ingredients are furnished by the person ordering such feed, unless the feed is to be consumed by such person.

(10) That the inspection tax is due on all milling or mixing processes even though the customer furnishes a portion of the ingredients and the miller, mixer or processor adds other ingredients in amounts specified by such customer unless the feed is to be consumed by the customer and even then the tax would be due as to the portion of the ingredients furnished by the miller, mixer or processor if a tax had not been paid on such latter ingredients prior thereto.

(11) That the inspection tax is due on all milling or mixing processes even though the customer specifies the amounts and percentages in such mixture unless the ingredients are furnished by the customer and is to be consumed by him and is not for re-sale.

(12) That the provisions of Articles 3872 and 3875, V. C. S., and the corresponding Articles 1489 and 1492, V. P. C., apply in all instances where an inspection tax is due.

(13) That every manufacturer, importer or seller must keep all records and make all reports provides for in Title 60, that will enable

Dr. M. T. Harrington, page 8　(Opinion No. S-181)


the director of the Texas Agricultural Experiment Station to determine whether a tax is due or whether an exemption exists under the provisions of either Article 3881b or 3881d.

(14)　The director of the experiment station by virtue of the provisions contained in Articles 3875 and 3880 wherein he is empowered to adopt such regulations as may be necessary for the enforcement of the law does not have the authority to require manufacturers, importers, or sellers of feed stuff to make any reports or keep any records not provided for in the "feeding stuff" law.　Margolin v. State, 205 S.W. 2d 775 (Tex. Crim. 1947).　Even if he had such authority, the order would be unenforceable, in that no penalty is provided by the Act for failure to comply.

Yours very truly,

APPROVED:

JOHN BEN SHEPPERD
Attorney General

Mert Starnes
Reviewer

J. A. Amis, Jr.
Reviewer

By　W. V. Geppert

W. V. Geppert
Assistant

L. W. Gray
Special Reviewer

Davis Grant
First Assistant

John Ben Shepperd
Attorney General