## LUIGI STORTI *vs.* COMMONWEALTH.
## LUIGI STORTI'S CASE.

Suffolk.　May 6, 1901. — May 7, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

Whether the provision of the Massachusetts Declaration of Rights that "No magistrate or court of law shall . . . inflict cruel or unusual punishments" applies to punishments provided by statutory enactment, *also*, whether the prohibition extends to punishments which are unusual but not cruel, *quære.*

St. 1898, c. 326, § 6, providing that the punishment of death shall be inflicted by causing a current of electricity to pass through the body of the convict, does not inflict a cruel or unusual punishment within the meaning of article 26 of the Massachusetts Declaration of Rights. The punishment is death; and the adoption of new means, for the purpose of producing death as swiftly and painlessly as possible, is not forbidden by the Constitution, although the means adopted be the result of discoveries of recent science not previously known in Massachusetts.

The provision of St. 1898, c. 326, § 2, that after delivery to the warden of the State prison of a convict sentenced to death, the prisoner shall be kept in a special cell and only certain persons allowed access to him without an order of court, does not and is not intended to prevent the presence of the prisoner in court in any matter which properly may be brought up in court and which by the course of law or treaty requires his presence.

The provision of St. 1898, c. 326, § 3, leaving it to the warden of the State prison to select the day within the week appointed by the court on which a prisoner sentenced to death shall be executed, was not intended to aggravate the prisoner's distress by enhancing his suspense, and does not inflict a punishment. The purpose is humane, and the possible uncertainty for a brief period as to the exact time of execution is not a part of the punishment.

TWO PETITIONS by and in behalf of Luigi Storti, convicted of murder in the first degree and sentenced to death, one for a writ of error and the other for a writ of habeas corpus, both filed April 30, 1901.

The prisoner at the time of filing the petitions was held by the warden of the State prison, having been sentenced to suffer death by electricity under St. 1898, c. 326, at some time in the discretion of the warden within the week beginning April 7, 1901, which by respite had been extended to some time within the week beginning May 12, 1901.

The question raised by both petitions was whether the punishment inflicted by the statute is cruel or unusual in violation

of article 26 of the Massachusetts Declaration of Rights. The material sections of the statute are as follows:

" Section 2. When a person is sentenced to the punishment of death he shall be confined in a jail or prison in the county in which such sentence is pronounced until within ten days of the first day of the week appointed for the execution of the sentence. He shall, within such ten days, and at a time chosen by the sheriff of the county, be conveyed as secretly as may be, by the sheriff or such deputy as he may name, to the state prison, where the sentence is to be executed, and be delivered, together with the warrant, to the warden or the officer performing the duties of warden. From the time of such delivery until the infliction of the punishment of death upon him, unless he shall be lawfully discharged from such imprisonment, the convict under sentence shall be kept in a cell provided for the purpose, and no person shall be allowed access to him without an order of the court, except the officers of the prison, his counsel, his physician, a priest or minister of religion, if he shall desire one, and the members of his family.

" Section 3. The sentence of death shall be executed by the warden of the state prison, or by a person or persons acting under the direction of the warden. Unless the governor pardons the offence, commutes the punishment therefor, or respites the execution, as provided by law, the execution shall be done within the week appointed by the court; and in case the execution is respited the sentence shall be executed within the week beginning on the day next after the day on which the term of respite expires. The execution shall be done upon such day as the warden shall select within the week determined as aforesaid, and at an hour between midnight and sunrise; but no previous announcement shall be made, except to the persons who shall be permitted to be present at such execution, as hereinafter provided."

" Section 6. The punishment of death shall in every case be inflicted by causing to pass through the body of the convict a current of electricity of sufficient intensity to cause death, and the application of such current must be continued until such convict is dead."

Article 26 of the Declaration of Rights is as follows:

"No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments."

The cases upon both petitions were heard by *Loring,* J., who reserved them for the consideration of the full court in order that this court might make such order therein as in their opinion law and justice might require.

The second assignment of error alleged that the punishment provided by the statute was in fact unusual, the third assignment that it was in fact cruel or unusual and the fourth assignment alleged that the statute provided for the infliction of the punishment of death by means which in fact are cruel, unusual, of an uncertain character, and which in fact necessitate for their successful action a remote combination of circumstances circuitously affecting the functions of organic life, by secret and invisible means, which means, in fact, are unusual, cruel and unknown to the laws of this Commonwealth, and which punishment is contrary to the provisions of article 26 of the Declaration of Rights and contrary to the provisions of the Constitution of Massachusetts.

The justice in his reservation made the following report of his findings upon the above allegations of fact contained in the assignments of error:

"Against the objection of the Attorney General, the second, third, and fourth assignments of error came on to be heard before me as assignments of errors in fact. It was conceded by the Commonwealth that the petitioner in this writ of error is a citizen of the King of Italy; that the punishment of death by electricity has never been inflicted in this Commonwealth and that electricity has never been used as a means of punishment for any offence in this Commonwealth.

"I find as a fact that if electricity is properly applied it is necessarily fatal, and causes death practically instantaneously; that in causing death it is more speedy, less painful, and more humane than is hanging. I further find as a fact that it is not of an uncertain character; that it does not in fact necessitate for its successful action a remote combination of circumstances circuitously affecting the functions of organic life by secret and invisible means.

" I also find that by the Revised Statutes of Maine (1883), by the Revised Statutes of Illinois (1899), Revised Statutes of Arizona (1887), Statutes and Code of Washington (1891), Code of Tennessee (1896), Revised Statutes of Florida (1892), Code of Alabama (1896), Revised Statutes of New York (1829), and Revised Statutes of Ohio (1890), it is provided that the means of carrying into effect the sentence of death shall be by hanging by the neck; and that by the statutes of Ohio (revision of 1900) it is provided that the means of carrying into effect the sentence of death shall be by causing a current of electricity to pass through the body sufficient to cause death; and that a statute was enacted in New York in January, 1888, providing that 'the punishment of death shall be inflicted by causing a current of electricity to pass through the body of the convict, and such current must be continued until the convict be dead.

" I find as a fact that the second, third, and fourth assignments are not true."

*C. W. Rowley*, for the plaintiff in error.

*W. M. Stockbridge*, for the petitioner.

*F. H. Nash*, Assistant Attorney General, for the Commonwealth.

HOLMES, C. J.   These proceedings are respectively a writ of error and a petition for a writ of habeas corpus.   Both are intended to raise the same issue, that the punishment, death by electricity, to which the said Storti has been sentenced, under St. 1898, c. 326, § 6, is " cruel or unusual" within article 26 of the Massachusetts Declaration of Rights.   Upon the writ of error, the plaintiff in error insisting that the assignment was of error in fact, evidence was heard, the plaintiff in error being brought into court by habeas corpus to be present at the hearing, and the presiding justice found that the assignment was not true.   The independent petition for habeas corpus was reserved by agreement of parties for hearing by the full court at the same time with the writ of error.

In the view which we take of the case it is unnecessary to consider any question of procedure, either as between the two proceedings adopted or as to matters of detail arising under each.   We therefore pass all such matters on one side.   It also is unnecessary to consider whether the before-mentioned article

of our Declaration of Rights is to be limited in its application to the action of magistrates so far as they are left to themselves and the common law, or whether it is to be taken to embody a large general principle equally binding upon all branches of the Government, or at least binding upon magistrates and courts of law even when the Legislature has undertaken to establish a punishment by its act. Finally it is unnecessary to go into any nice argument upon the words of the article, and to decide whether, inasmuch as those words are " cruel or unusual," not " cruel and unusual," a punishment which is unusual but is not cruel is forbidden by them.

Taking all the preliminaries most favorably for the prisoner, we are clearly of opinion that the Constitution is not contravened by the act, and we render our opinion at once that we may avoid delaying the course of the law and raising false hopes in his mind. The answer to the whole argument which has been presented is that there is but a single punishment, death. It is not contended that if this is true the statute is invalid, but it is said that it is not true, and that you cannot separate the means from the end in considering what the punishment is, any more when the means is a current of electricity than when it is a slow fire. We should have thought that the distinction was plain. In the latter case the means is adopted not solely for the purpose of accomplishing the end of death but for the purpose of causing other pain to the person concerned. The so called means is also an end of the same kind as the death itself, or in other words is intended to be a part of the punishment. But when, as here, the means adopted are chosen with just the contrary intent, and are devised for the purpose of reaching the end proposed as swiftly and painlessly as possible, we are of opinion that they are not forbidden by the Constitution although they should be discoveries of recent science and never should have been heard of before. Not only is the prohibition addressed to what in a proper sense may be called the punishment but, further, the word "unusual " must be construed with the word " cruel " and cannot be taken so broadly as to prohibit every humane improvement not previously known in Massachusetts. *People* v. *Durston*, 119 N. Y. 569; *S. C. In re Kemmler*, 136 U. S. 436.

The suggestion that the punishment of death, in order not to be unusual, must be accomplished by molar rather than by molecular motion seems to us a fancy unwarranted by the Constitution.

No doubt a means might be adopted which, although adopted only as a means, practically would be part of the punishment and would have to be considered as such. But such a case is not presented by a means chosen precisely because it is instantaneous. There was a hint at an argument based on mental suffering, but the suffering is due not to its being more horrible to be struck by lightning than to be hanged with the chance of slowly strangling, but to the general fear of death. The suffering due to that fear the law does not seek to spare. It means that it shall be felt.

Some criticism was addressed to minor details of the law. The provision that after delivery to the warden of the State prison the prisoner shall be kept in a special cell and only certain persons allowed access to him without an order of the court, does not prevent, and by its true construction is not intended to prevent, the presence of the prisoner in court in any matter which properly still may be brought up in court, and which by the course of law or treaty may require his presence, (see *Commonwealth* v. *Cody*, 165 Mass. 133, 138,) as was exemplified in this case.

Leaving it to the warden to select the day of the week appointed by the court for the execution was not intended to aggravate the prisoner's distress, by enhancing his suspense. The purpose is humane, and the possible uncertainty for a brief period as to the exact time is not a part of the punishment. See further *Commonwealth* v. *Costley*, 118 Mass. 1, 35.

*Judgment to stand ; writ of habeas corpus denied.*