## BILLY SINGLETON V. THE STATE.

No. 20800. Delivered February 21, 1940.
Rehearing Denied April 3, 1940.

The opinion states the case.

*John F. McLaurin*, of San Augustine, and *Minton & Minton*, of Hemphill, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant, a negro man, was convicted by the jury of the unlawful killing of his wife, Wealthy Roberts Singleton, and given a penalty of seventy-five years in the State prison.

The State's testimony shows that appellant and his wife had been separated for about three weeks, and the deceased and her fourteen year old daughter, appellant's step-daughter, were living at the house of Laurie Roberts, the deceased's brother. The testimony shows that appellant had been coming to the house of Laurie Roberts practically every day during this separation, attempting to get his wife to come back to him. That he threatened to kill her at one time while she was at her brother's home, drawing his pistol on her. That finally she did go back home with him, and that he beat her while on the way back home, and treated her so brutally that she again left him on the next morning and came back to her brother's. That on the date of the killing, June 5, 1939, late in the afternoon, the deceased and appellant were sitting out on the porch of the Roberts' home in a swing, and a witness saw both parties running towards the front door of such home, the deceased being closest to the door, and appellant following her, at which time appellant fired two shots, and after the parties got inside the house the witness heard three more shots. It developed that the deceased was shot, as evidenced by four wounds, in her chest and back, and one in her hand, one of the chest wounds entering from the front, and the other three entered from the back. Prior to the date of the killing the officers had found appellant at the Roberts house with a pistol on his person, and it was testified that he had been threatening the life of his wife at such time.

Appellant's defense was that he was present at such place in an endeavor to get his wife to go back to him, and that one Tom Moore, the father-in-law of Roberts,—and who lived with Roberts,—came out on the porch where they were talking, and while appellant and his wife were arguing over who should pay for a divorce case that appellant had filed against his wife, appellant said: "She would make me pay for the divorce and kill me before I left there. * * * Tom Moore said, 'If you don't pay for this divorce, g— d— you, you will never get out of that gate,' and he started in the east room to get a gun." That appellant was shooting at Moore and not his wife. That he hit her accidentally every time that his bullets struck her. Evidently the jury did not accept appellant's version of these five accidental shots.

The only bill of exceptions relates to the argument of the district attorney, which bill we quote from as follows:

" 'The defendant has asked for a suspended sentence; the State joins the defendant in this request, but it is not the same kind of suspended sentence that the defendant wants; and although you can not give it to him, the kind of suspended sentence the defendant deserves is to be suspended from the end of a 10-foot grass rope swung over a limb, with the blue sky above and the green grass below.'

"Immediately upon making such argument, the defendant excepted to such argument as being inflammatory and prejudicial to the rights of the defendant, and the defendant then and there requested the court to instruct the jury to disregard such argument; the court granted the defendant's request and immediately instructed the jury to disregard such argument and give no consideration to same."

Appellant in his brief complains because he asserts that such argument was an appeal to mob violence and race prejudice, and although the court very promptly instructed the jury to disregard the same, it was so serious and damaging that its injurious effect could not be withdrawn by such instruction. In his brief appellant cites many authorities relative to improper argument, and we find ourselves in accord with a great portion thereof. In the majority of instances the fault in such argument lies either in a veiled appeal to mob law, or to some matter unknown to the proper record of said case, but merely being testimony brought into the case in the State's attorney's speech.

We are of the opinion that the above objected to quotation was not an appeal to mob law, and was not so intended. We would rather say that it was a reference to the method in vogue but a few years ago of the infliction of the death penalty, that is by a legal hanging of one to be executed under the mandate of the law. It was surely well known as a matter of common knowledge that prior to the year 1923 all legal executions were had by means of hanging, but since the passage of Art. 798, C. C. P., such unfortunate persons are executed by an electrocution. It is evident that such was the intended reference from the quotation: "and although you can not give it to him."

We do not think any serious error is evidenced by said bill; and in the light of the careful trial court's prompt withdrawal thereof, we are constrained to overrule this bill.

There is nothing further presented herein, and although the severity of the verdict is complained of, we are impressed

with the idea that the facts amply show a brutal killing of a fleeing woman because she refused to live with appellant, a reputed prize fighter, who had brutally beaten her more than once.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant assumes that the argument of which he complains was an appeal to race prejudice and mob violence. If we could agree with appellant upon either proposition a reversal would follow under many authorities to which we are referred. However, we think our appraisement of the argument in our original opinion is correct.

The motion for rehearing is overruled.