A. A. MARGOLIN v. THE STATE.

No. 23664. Delivered October 29, 1947.
Rehearing Denied November 26, 1947.

*Jack K. Ayer* and *James V. Allred,* both of Houston, for appellant.

*Price Daniel,* Attorney General, and *Burnell Waldrep,* Assistant Attorney General, of Austin, and *A. C. Winborn,* Criminal District Attorney, and *E. T. Branch,* Assistant Criminal District Attorney, both of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This is a conviction for violating the Pure Food Law; the punishment, a fine of $200.00.

The accusation, as laid in the information, was to the effect that on September 4, 1946, appellant manufacturer for sale and offered for sale an article of food, viz, a bottle of soda water which was "then and there adulterated in this, to-wit:

"A substance, to-wit: saccharin, was then and there mixed with said article of food so as to lower and injuriously affect the quality and strength of said article of food, and a valuable constituent of said article, to-wit: sugar, was then and there wholly and in part abstracted therefrom, and said article was below the standard of quality and purity represented to the consumer thereof * * *."

By Article 706, P. C., it is made unlawful for one to manufacture for sale, offer for sale, or sell any article of food which is adulterated. Bottled soda water is there defined as an article of food. ·

By Article 707, P. C., an article of food is adulterated:

"(1) if any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength;

"(2) if any substance has been substituted wholly or in part for the article;

"(3) if any valuable constituent of the article has been wholly or in part abstracted, or if the product be below that standard of quality, quantity, strength or purity represented to the purchaser· or consumer.

"(4) if it be mixed, colored or powdered, coated or stained in a manner whereby damage or inferiority is concealed;

"(5) if it contains any added poisonous or other added deleterious ingredient which may render such article injurious to health, provided, that when in the preparation of food products for shipment they are preserved by any external application applied in such manner that the preservative is necessarily removed mechanically, or by maceration in water or otherwise, and directions for the removal. of said preservative shall be printed on. the covering of the package, the provisions of this Act shall be construed as applying only when said products are ready for consumption;

"(6) if it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal or vegetable unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that died otherwise than by slaughter."

The information charged a violation of Sections (1), (2), and (3) of that Article.

The Legislature has not prohibited, by name, the use of saccharin in the manufacture of bottled soda water. If it be unlawful, then, to use saccharin in such, it is so by reason of the fact that such constitutes an adulterated food, as that term is defined by law.

The facts show that appellant is a manufacturer—that is, a bottler—of soda water and, as such, did manufacture for sale and offer for sale a bottle of cream soda water which contained saccharin. The facts further show that saccharin is a drug; it is not a food, and has no food value. It may be taken in sufficient quantities to be injurious to health, especially that of a child. The amount of saccharin in the bottle of soda water upon which this prosecution is based was slight and not of sufficient amount, of and within itself, to be injurious to health.

The purpose for which the saccharin was here used was as a sweeting agent to displace, and it did displace, three per cent. of sugar content. Sugar is the principal food ingredient of soda water.

In addition to the foregoing facts, the State introduced in evidence the following order of the State Board of Health promulgated by the State Health Officer:

" 'Beverages
" 'A. Carbonated Beverages, Soda, Soda Water

" 'The term "carbonated beverage," "soda," or "soda water," used in this definition shall include all beverages prepared from sugar sirup or sugar and dextrose sirup, soda water flavor, and potable carbonated water, with or without harmless color, and with or without acidulation by the use of harmless organic *acide*, or pure phosphoric acid.' "

## "SACCHARIN IN CARBONATED BEVERAGES, SODA SODA WATER, SOFT DRINKS, AND FOOD.

" 'The use of saccharin as an ingredient in carbonated beverages, soda, soda water, soft drinks, or other food is hereby prohibited. Any carbonated beverage, soda, soda water, soft drink, or other food containing saccharin will be considered as adulterated under the Texas Food and Drug Law.' "

"Since saccharin comes within the definition of a drug and has no food value, and, further, in view of the possible harmfulness of saccharin in food products, the State Health Officer has no alternative but to inform you that any carbonated bever-

age, soda, soda water ,soft drink, or other food containing saccharin as an ingredient will be considered as adulterated under the Texas Food and Drug Law. It will be our purpose to investigate any carbonated beverage, soda, soda water, soft drink, or other food containing saccharin as an ingredient and refer the facts so obtained to the courts for appropriate legal action.

"Yours very truly,

"GEO. W. COX

"GWC: SC          "Geo. W. Cox, M. D.
  "590              State Health Officer"

Appellant admitted that he was in possession of a copy of said order and had full knowledge thereof at the time he bottled and offered for sale the soda water containing saccharin. The question of prior notice of the order is therefore not presented.

The court before whom the case was tried, without the intervention of a jury, certifies that he construed the order mentioned as setting up a "standard for cream soda water under which the use of saccharin therein made such article of food adulterated and supplemented the provisions of Art. 707 of the Penal Code by prescribing such standards for soda water * * *."

The trial court further certifies that he predicated his finding of guilt upon the order mentioned and that, without such order, he would have held the evidence insufficient to support appellant's conviction. Why the trial court made such a finding in view of the testimony showing that the use of saccharin in the soda water displaced a valuable food content therein is not for us to question. The certificate precludes our consideration of the facts as authorizing appellant's conviction, independent and outside of the order mentioned.

Appellant did not object to the receipt in evidence of the order of the State Health Officer. He did object to the consideration by the court of said order because (a) Art. 707, P. C. having defined "adulterated foods," the State Halth Officer was powerless to add to such definition; (b) that order was based upon an unwarranted delegation of legislative authority prohibited by both State and Federal Constitutions; (c) no statutory authority existed regulating procedure—such as notice and hearing antecedent to the order; and (d) the effect of the trial court's ruling was to find appellant guilty of violating an order of an administrative tribunal.

It is insisted by the State that the Legislature delegated to the State Health Officer the power and authority to determine that the use of saccharin in a bottle of soda water constituted same as adulterated food and that the order so made was a valid exercise of that power.

Appellant insists that the Legislature made no such delegation of authority, but that if it did make that delegation it was unwarranted and violative of Art. II(2) Sec. 1, of the Constitution of this State.

Such are the questions presented for our determination. It becomes necessary, then, to construe the controlling statutes and the order of the State Health Officer promulgated by authority thereof.

The Legislature in the exercise of its police power to protect the public health created the State Department of Health, consisting of a State Board of Health, a State Health Officer, and his administrative staff (Art. 4414a, R. C. S.). To the State Board of Health, composed largely of physicians, the Legislature gave general supervision and control of all matters pertaining to the health of the citizens of this State (Art. 4419, R. C. S.). The State Health Officer, a qualified physician, was declared to be the executive head of the Department of Health Art. 4418b, R. C. S.) and, as to the matter of food and drugs, was empowered to "make, publish and enforce rules consistent with this law, and adopt standards for foods, food products, beverages, drug, etc. * * *" and "inquire into the quality of the foods and drug products manufactured or sold or exposed for sale, or offered for sale in this State * * *." (Art. 4466, R. C. S.).

It is upon the power thus delegated that the State relies to support its contention.

As heretofore noted, the Legislature made it unlawful for one to manufacture for sale or offer for sale adulterated food, defining at length the term "adulterated." (Articles 706 and 707, P. C.). In the order mentioned, the State Health Officer found as a fact that saccharin is a drug with no food value and that possible harmful effect might result from its use in food. Based upon these findings, he concluded that bottled soda containing saccharin was an adulterated food and, upon that conclusion, determined that the use of saccharin in bottled soda water was prohibited.

Appellant takes the position that he stands here convicted of violating the order of the State Health Officer prohibiting the use of saccharin in bottled soda water. The record is not susceptible of that construction. In the first instance, appellant was not charged in the information with violating an order of the State Health Officer. A conviction rests, first, upon a valid information and the allegation contained therein. Secondly, we know of no statute making it unlawful to violate an order of the State Health Officer prohibiting the manufacture of foods found by him to be adulterated. The conviction was for manufacturing and possessing for the purpose of sale an adulterated food.

It is urged that the general powers delegated to the State Health Officer by the statutes mentioned, and especially that to "adopt standards for foods," authorized the entry and promulgation of the order mentioned. In other words, the power to adopt standards for food delegated to the State Health Officer the power (a) to determine, independently of the statutory definition, what was an "adulterated" food, or, (b) when food became adulterated under the statutory definition.

The generally accepted rule governing the delegation of legislative power is that a legislative body may, after declaring a policy and fixing a primary standard, delegate to an administrative tribunal or officer the power to fill up the details so as to carry out and effectuate the legislative purpose. Williams v. State, 176 S. W. (2d) 177, 146 Tex. Cr. R. 430, and authorities there cited.

Here, the purpose of the Legislature was to prohibit the manufacture for sale, offering for sale, and selling of adulterated food. In defining the term "adulterated," the Legislature, itself, fixed the primary standard and prescribed the details by which it might be determined when food was adulterated. Having so prescribed, there was nothing for the Legislature to delegate; there were no details to be filled in. Any attempt on the part of the Legislature, under such circumstances, to delegate to an administrative officer the power to determine whether or not food was adulterated would constitute unauthorized delegation of legislative power and be violative of Art. II.(2), Sec. 1, of the Constitution of this State. On the other hand, any attempt on the part of the Legislature to delegate to an administrative officer the power to determine whether or not food is adulterated, under a fixed statutory definition, would invade the province of our judicial department of government and be violative of the same provision of our Constitution mentioned.

From what has been said, it is evident that the statutes mentioned and herein discussed cannot be given the construction as authorizing the State Health Officer to determine, as a matter of law, what constitutes adulteration, and that the order, in so far as it attempted to do so, was without authority.

The trial court having based his conclusion of guilt alone upon the order of the State Health Officer, it follows that the judgment must be reversed and the cause remanded. It is so ordered.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Because of the importance of the question involved we have given the State's motion for rehearing most serious consideration, as we did its contention on original submission.

There is little, if anything, which may be added to what was said in our original opinion.

Appellant was charged with violating Sections 1, 2 and 3 of Art. 707 of the Penal Code, which plainly states by legislative act when an article of food (here soda water) is adulterated. We tried to make it clear in our opinion that the Legislature could properly delegate to the State Health Officer the power to ascertain as a fact what the soda water contained; and if saccharin was found therein, then it became a matter of judicial ascertainment whether the saccharin found therein lowered and injuriously affected the quality and strength of said soda water, and whether a valuable constituent, to-wit: sugar, had been abstracted from said drink, and whether it was below the standard of quality and purity represented to the consumer thereof. (See our original opinion for the specific offense charged against appellant.)

The State Board of Health through the State Health Officer promulgated an order (see original opinion), not that the soda water manufactured by appellant contained saccharin, but that any soda water containing saccharin would be considered as adulterated, thereby assuming to act instead of the court, in determining such matter. The trial court construed said order as binding upon him, and thereon found appellant guilty, but

certifies that without such order he would have found him not guilty.

As the record comes before us our original opinion appears to properly dispose of the case.

The State's motion for rehearing is overruled.