### Ex parte Kenneth GRANVIEL.

### No. 56267.

Court of Criminal Appeals of Texas, En Banc.

Feb. 1, 1978.

Frank W. Sullivan, III, Fort Worth, for appellant.

Tim C. Curry, Dist. Atty., Marvin Collins and Howard M. Fender, Asst. Dist. Attys., Fort Worth, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction habeas corpus proceeding under Article 11.07, V.A.C.C.P., in which petitioner seeks to set aside his death sentence and to have Article 43.14, V.A.C.C.P., establishing a new method of execution, declared unconstitutional. We stayed petitioner's execution scheduled for September 16, 1977, pending disposition of these proceedings. Petitioner's conviction for capital murder, wherein the death penalty was assessed, was affirmed by this court in *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976), cert. den. 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977).

Petitioner contends the new method of execution would subject him to cruel and unusual punishment prohibited by the Eighth Amendment, United States Constitution. See also Article I, § 13, Texas Constitution. He further urges said Article 43.14 is unconstitutionally infirm for vagueness for its failure to specify what substance or substances shall be used in the injection to execute a condemned prisoner,

that it results in an improper delegation of legislative authority to the Director of the Department of Corrections and is in irreconcilable conflict with Article 6166j, V.A. C.S. He further attacks the constitutionality of Article 37.071, V.A.C.C.P.[1]

With the enactment of the amendment to Article 43.14, supra, on May 11, 1977, Texas became the second jurisdiction to provide statutorily for the execution of capital felony offenders by the intravenous injection of a lethal substance. A similar law was enacted in Oklahoma one day earlier. See 1977 Okla.Sess.Law Serv., ch. 41, § 1, at pp. 89–90, amending 22 O.S.1971, § 1014.[2]

The amendment to said Article 43.14 reads:

"Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time before the hour of sunrise on the day set for the execution not less than thirty days from the day of sentence, as the court may adjudge, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the Director of the Department of Corrections." Acts 1977, 65th Leg., ch. 138, p. 287.

At the same time Article 43.18, V.A.C. C.P., was amended to permit the Director of the Department of Corrections to designate an executioner rather than serving as executioner. Acts 1977, 65th Leg., ch. 138, p. 288.

Thus, the Legislature sought to change the method of execution in this state from electrocution as formerly provided in said Article 43.14[3] and which has been the method of execution since 1923.[4]

At the post-conviction habeas corpus hearing in the trial court, the State introduced into evidence the affidavit of W. J. Estelle, Jr., Director of the Department of Corrections:

"September 7, 1977
"Mr. Howard Fender
Assistant District Attorney
200 W. Belknap
Fort Worth, Texas
"Dear Mr. Fender:
"In response to your request, please be advised that pursuant to Vernon's Annotated Criminal Code of Procedure, Article 43.14, provides that the execution procedure will be determined by the Director of the Texas Department of Corrections. Your specific question of me asked 'What specific substance will be used in carrying out executions?'

1. There are four other contentions urged, but these were adequately addressed on direct appeal in *Granviel v. State*, supra, and we decline to further discuss those matters.

2. Said § 1014, as amended, provides:
 "A. The punishment of death must be inflicted by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent until death is pronounced by a licensed physician according to accepted standards of medical practice.
 "B. If the execution of the sentence of death as provided in subsection A of this section is held unconstitutional by an appellate court of competent jurisdiction, then the sentence of death shall be carried out by electrocution.
 "C. If the execution of the sentence of death as provided in subsections A and B of this section is held unconstitutional by an appellate court of competent jurisdiction, then the sentence of death shall be carried out by firing squad."

3. Prior to the 1977 amendment, Article 43.14, V.A.C.C.P. (Execution of Convict) read:
 "Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time before the hour of sunrise on the day set for the execution not less than thirty days from the day of sentence, as the court may adjudge, by causing to pass through the body of the convict a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of such convict until he is dead." Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.

4. Prior to the 1977 amendment, Article 43.14, V.A.C.C.P., was former Article 798, V.A.C.C.P., 1925, unchanged. The original act (changing the mode of execution from hanging to electrocution) was Acts 1923, 38th Leg., 2nd C.S., p. 111. It was common knowledge that prior to 1923 all legal executions were had by means of hanging. (*Singleton v. State*, 139 Tex.Cr.R. 28, 138 S.W.2d 100 (Tex.Cr.App.1940)).

"After considerable consultation with people familiar with lethal substances, the decision has been made to use sodium thiopentol in lethal doses. It will be administered by medical technicians knowledgeable in such procedure and a medical doctor will be present, but will not participate in any aspect of the execution other than to pronounce death.

"Very truly yours,

"/s/ W. J. Estelle, Jr.

SWORN TO AND SUBSCRIBED BEFORE ME by the said W. J. Estelle, Jr., this 7th day of September, 1977.

"/s/ Dorothy Coleman

NOTARY PUBLIC in and for Walker County, Texas"

The petitioner and the State jointly called as a witness Dr. Gary Harold Wimbish, a toxicologist with ten years' experience. Wimbish, an assistant professor of pathology at the Texas College of Osteopathic Medicine, testified he was certified by education and experience to determine what substance would be lethal to a human being. He explained that the drug sodium thiopental[5] was a paralytic agent, a rapidly acting barbiturate commonly used in preoperative anesthesia. He stated a massive dosage of the drug would be calculated to kill any human if properly administered, and that records showed a lethal dosage of the drug ranges from two to five grams.[6] He explained that a solution of sodium thiopental in sterile water was commonly administered with syringe and needle and injected intravenously and that the only expected pain would be from the insertion of the needle. Wimbish further related that the drug is commonly administered by an anesthesiologist, who is a physician, but it could be administered by a registered nurse, L.V.N., medical technician or any person trained in intravenous injections. His conservative estimate was that unconsciousness would ensue within fifteen seconds after injection, the time it takes the blood of an individual to reach the brain from the elbow or site of injection, and if a lethal dosage was administered, death would occur within approximately thirty seconds,[7] a virtually painless death consistent with the intent of Article 43.14, supra. Dr. Wimbish noted a wide variety of poisons that could potentially cause death if injected into a human's bloodstream, but he indicated that sodium thiopental was a drug unique in its effect and onset of action, and if he had been consulted by Director Estelle he would not have advised against its use in executions but would have given it high priority in consideration. There was no other proof offered at the habeas corpus hearing.

Appellant urges the new method of execution provided by Article 43.14, supra, violates the Eighth Amendment provision against cruel and unusual punishment. See also Article I, § 13, Texas Constitution. The United States Supreme Court has always held that the imposition of the death penalty is not cruel and unusual punishment *per se, Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 2954, 49 L.Ed.2d 929, 936 (1976); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 882–883 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 2964, 49 L.Ed.2d 913, 920 (1976); *In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct.

---

**5.** The witness stated another acceptable spelling of the drug's name was sodium thiopento l, and that its trade name was sodium pentothal.

**6.** He explained that tolerance of the drug varied from individual to individual and that a lethal dosage depended in part on the weight of the individual.

**7.** Compare *ROYAL COMMISSION ON CAPITAL PUNISHMENT REPORT,* 1949–1953, London, at 257:

"The drug, probably a barbiturate, such as hexobarbitone or thiopentone, would be injected into a vein, preferably at the bend of the elbow or the wrist. In about twenty or thirty seconds, perhaps before the dose was completed, the drug would reach the brain. The prisoner would then become unconscious and die a minute or two later. There would be no danger of failure if a large enough dose were given, and the prisoner would feel nothing after the prick of the needle."

Compare also 9 *ST. MARY'S LAW JOURNAL,* Statute Note, "Capital Punishment—Texas Statutes Amended to Provide for Execution by Intravenous Injection of a Lethal Substance," 359, 364, footnotes 52 and 54.

930, 34 L.Ed. 519 (1890); *Wilkerson v. Utah,* 99 U.S. 130, 25 L.Ed. 345 (1879), and the Court of Criminal Appeals has been in accord with such position. See, e. g., *Livingston v. State,* 542 S.W.2d 655, 662 (Tex.Cr. App.1976); *Gholson and Ross v. State,* 542 S.W.2d 395 (Tex.Cr.App.1976); *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); *Cherry v. State,* 488 S.W.2d 744, 755 (Tex. Cr.App.1972), cert. den. 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1972); *Tezeno v. State,* 484 S.W.2d 374 (Tex.Cr.App.1972); *David v. State,* 453 S.W.2d 172, 179 (Tex.Cr. App.1970).

It is observed that the constitutionality of executions by hanging or firing squad [*Wilkerson v. Utah,* supra], by electrocution [*In re Kemmler,* supra] and by lethal gas [*State v. Gee Jon,* 46 Nev. 418, 211 P. 676, 682 (1923); *People v. Daugherty,* 40 Cal.2d 876, 256 P.2d 911, 922–923 (1953), cert. den. 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352 (1953); *In re Anderson,* 69 Cal.2d 613, 73 Cal.Rptr. 21, 34, 447 P.2d 117, 130 (1968), cert. den. 406 U.S. 971, 92 S.Ct. 2415, 32 L.Ed.2d 671 (1972)] have been upheld.

In *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 464, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947), it was held:

". . . [t]he cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely."

In 30 A.L.R. 1452 it is stated:

"The punishment of death is not in violation of the constitutional prohibition of cruel or unusual punishments unless it is so inflicted that it involves lingering death, torture, or such practices as disgraced the civilization of former ages. So long as the death inflicted is speedy, and without undue pain or torture, the provision is not violated."

In *State v. Woodward,* 68 W.Va. 66, 69 S.E. 385 (1910), the court wrote:

". . . This interdict applies to such punishment as amounts to torture, like drawing, quartering, burning at stake, cutting off nose, arms, or limbs, starving to death, or such as were inflicted by the act of Parliament in 22 Henry VIII, whereby the prisoner was ordered to be thrown into boiling water and boiled to death for poisoning . . . The word 'cruel,' as used in the Constitution, was intended to prohibit torture, agonizing punishment, but never intended to 'abridge the selection of the lawmaking power of such kind of punishment as was deemed most effective in the suppression of crime'. . . ." See also *State v. Williams,* 77 Mo. 310, 312–313 (1883); *In re Calhoun,* 87 Ohio App. 193, 94 N.E.2d 388 (1949); *Hart v. Commonwealth,* 131 Va. 726, 109 S.E. 582, 587 (1921).

The intravenous injection of a lethal substance as a means of execution has not been heretofore utilized in this nation and is now authorized in only two states. The fact that it is new and innovative would not, however, make it cruel and unusual. What is cruel and unusual "is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice" and "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). See also *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 258–259 (1976).

"When . . . the means adopted (to administer the death) are chosen with . . . intent and are devised for the purpose of reaching the end proposed as swiftly and painlessly as possible . . they are not forbidden by the constitution, although they should be discoveries of recent science, and never should have been heard of before . . . the word 'unusual' . . . cannot be taken so broadly as to prohibit every humane improvement not previously known . . ." *In re Storti,* 178 Mass. 549, 60 N.E. 210, 211, 52 L.R.A. 520 (1901).

In 9 *ST. MARY'S LAW JOURNAL,* Statute Note, "Capital Punishment—Texas Statutes Amended to Provide for Execution by Intravenous Injection of a Lethal Substance," 359 (1977), an excellent note on the

1977 amendment to Article 43.14, supra, it is stated at p. 363:

"Although intravenous injection of a lethal substance has never been authorized as a means of execution in the United States, it does not appear that this method will be deemed violative of the eighth amendment merely because it is new and unusual. Previous changes in the mode of execution have been evaluated by an 'evolving standard of decency' in light of public opinion and social progress. So long as the manner of execution is not deemed inhumane and barbarous, the fact that it has never been used before does not make it 'unusual' as forbidden by the Constitution."

■ Petitioner, who had the burden of proof at the habeas corpus hearing, offered no persuasive proof that execution by intravenous injection of a lethal substance is inherently cruel and inhumane. He now argues, however, that possible complications in the intravenous injection procedure might cause additional pain to the condemned prisoner.[8] We conclude that that possibility, should it arise, does not make the means of inflicting death inherently cruel. Rather, it could be characterized as a possible discomfort or suffering necessary to a method of extinguishing life humanely. See *Louisiana ex rel. Francis v. Resweber*, supra.

■■ We cannot conclude that said Article 43.14, as amended, constitutes cruel and unusual punishment in violation of either the federal or state constitutes or that it is disproportionate to the offense of capital murder, which is the only offense in Texas for which the supreme penalty may be imposed. V.T.C.A., Penal Code, § 12.31. See and cf. *Gregg v. Georgia*, supra.

8. Petitioner cites the following text on the nature of sodium thiopental:

"As described in the PHYSICIANS DESK REFERENCE, 534 (1977) adverse reactions to sodium thiopental (trade name Penthothal) include, 'respiratory depression, myocardial depression, cardiac arrhythmias . . . sneezing, coughing, bronchospasm, largngospasm and shivering.' The P.D.R. also states that, 'individual response to the drug is so varied that there can be no fixed dosage.' "

In his argument petitioner has urged that execution by electrocution is far more humane than the execution by injection of a lethal substance. Thus implicit in petitioner's argument that death by injection of a lethal substance or substances is more barbarous than execution by electrocution is the claim that said Article 43.14 violates the constitutional prohibition against ex post facto legislation. Article I, § 10, United States Constitution; Article I, § 16, Texas Constitution.

In *Malloy v. South Carolina*, 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915), the court held that prohibition against ex post facto legislation does not apply to the "mere alteration in conditions deemed necessary for the orderly infliction of humane punishment," and observed that producing death by electrocution rather than by hanging did not increase the punishment and did not violate the federal constitutional prohibition against ex post facto legislation.

■ In *Ex parte Johnson*, 96 Tex.Cr.R. 473, 258 S.W. 473 (1924), this court, citing *Malloy*, held that a defendant sentenced to die by hanging could instead be electrocuted (in view of the change in the law relating to the mode of execution) without violating the constitutional prohibition against ex post facto legislation. We conclude in light of these holdings that execution by lethal injection may be imposed upon a defendant even though death by electrocution was the mode of execution authorized by law at the time of the commission of capital murder, at the time of his trial, and even if he had been previously sentenced to die by electrocution.[9] The statute under

The *ROYAL COMMISSION REPORT* cited in footnote # 7 above contains a more complete discussion of possible complications in administering such an injection. See particularly paragraphs 740–742, p. 258.

See also 9 *ST. MARY'S LAW JOURNAL*, 359, 365, footnotes # 55 and # 56.

9. There is a good discussion of this question in 9 *ST. MARY'S UNIVERSITY LAW JOURNAL* 359, 361–362 (1977).

consideration did not change the penalty—death—for capital murder, but only the mode of imposing such penalty. The punishment was not increased, only some of the odious features incident to the former method of electrocution were abated.

■■■ Whenever an attack upon the constitutionality of a statute is presented for determination, we commence with the presumption that such statute is valid and that the Legislature had not acted unreasonably or arbitrarily in enacting the statute. See *Ex parte Smith*, 441 S.W.2d 544 (Tex.Cr. App.1969); *Smith v. Davis*, 426 S.W.2d 827 (Tex.Sup.Ct.1968). See also 53 Tex.Jur.2d, Statutes, § 158, p. 225. The burden rests upon the individual who challenges the act to establish its unconstitutionality. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.Sup.Ct. 1974), and if a statute is capable of two constructions, one of which sustains its validity, the courts will give to it the interpretation that sustains its validity. *Townsend v. State*, 427 S.W.2d 55 (Tex.Cr.App.1968); *Newsom v. State*, 372 S.W.2d 681 (Tex.Cr. App.1963); *Baldridge v. State*, 167 Tex. Cr.R. 519, 321 S.W.2d 309 (1959); *Lockhart v. State*, 150 Tex.Cr.R. 230, 200 S.W.2d 164 (1947). See also *State v. Shoppers World, Inc.*, 380 S.W.2d 107 (Tex.Sup.Ct.1964); *Alobaidi v. State*, 433 S.W.2d 440 (Tex.Cr. App.1968), cert. den. 393 U.S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281 (1968).

As stated in 53 Tex.Jur.2d, Statutes, § 184, p. 277:

"Every reasonable intendment and presumption will be made in favor of the constitutionality and validity of a statute, until the contrary is clearly shown. The legislature is presumed to have regarded constitutional limitations or requirements in enacting laws, as assiduously as the courts do in construing and applying them. And before a legislative act will be set aside, it must clearly appear that its validity cannot be supported by any reasonable intendment or allowable presumption." See also *Alobaidi v. State*, supra.

With this background, we now consider petitioner's attack upon the 1977 amendment to Article 43.14, supra, as being constitutionally infirm for indefiniteness and vagueness for its failure to specify what lethal substance or substances shall be used in the injection to execute condemned prisoners.

■■■ It is, of course, true that a "law must be sufficiently definite that its terms and provisions may be known, understood, and applied. An Act of the legislature which violates either of said Constitutions [Federal or Texas], or an Act that is so vague, indefinite, and uncertain as to be incapable of being understood, is void and unenforcible." *Ex parte Halsted*, 147 Tex. Cr.R. 453, 182 S.W.2d 479, 482 (1944).

Appellant argues it cannot be ascertained from the statute what substance or substances can be used in the injection and that the statute fails to offer any hint as to which substance or substances would be permissible. The State points out that the petitioner has cited no authority for his contention; that the electrocution statutes throughout the United States have not prescribed the use of a chair, the amount of voltage, the volume of amperage, the place of attachment of electrodes, or whether or not AC or DC current shall be used. The earlier hanging statutes did not, the State argues, prescribe the type of gallows, the height of fall, the type of rope or type of knot used, etc. Likewise, the State says, the laws relating to execution by firing squads did not specify the number of executioners, the muzzle velocity of the rifles, the type of bullets, or the distance of the guns to the condemned. The State urges the earlier execution statutes were never in any greater detail than the statute under attack and that none of them had been declared unconstitutional on the basis of being vague.

It appears the United States Supreme Court has been unwilling to invalidate on

In Attorney General's opinion 0–5765 (1944), it was held that a defendant who was convicted of murder and sentenced to death by hanging but who escaped before execution could be electrocuted under current statute if apprehended and returned to Texas.

the grounds of vagueness a statute so general that it failed to specify a manner of execution. In *Wilkerson v. Utah,* 99 U.S. 130, 25 L.Ed. 345 (1830), the Court upheld a Utah territorial statute containing the direction that "every person guilty of murder shall suffer death," without providing for a mode of execution. Earlier territorial law provided that a person convicted of a capital offense should suffer death by being shot, hanged or beheaded as the court should direct. Upon amendment, reference to the modes of execution were eliminated. Upon Wilkerson's conviction, the trial judge ordered him to suffer death by shooting. Noting the code did not provide for a mode of execution, the Supreme Court observed that § 10 of the Revised Penal Code did provide:

"... the several sections of this Code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence to determine and impose the punishment prescribed." Comp.L.Utah 1876, p. 567.

The Court then concluded:

"Statutory directions being given that the prisoner when duly convicted shall suffer death, without any statutory regulation specifically pointing out the mode of executing the command of the law, it must be that the duty is devolved upon the court authorized to pass the sentence to determine the mode of execution and to impose the sentence prescribed. . . ." 99 U.S. at 137.

In *State v. Gee Jon,* 46 Nev. 418, 211 P. 676, 682, 30 A.L.R. 1443 (1923), attack was made upon the statute providing for death by a lethal gas on the grounds that the statute was indefinite and uncertain as to the mode of execution. There, the court wrote:

"... Nor do we find any merit in the contention that the act is indefinite and uncertain. It is certainly no more so than the act which it purports to amend. Rev.Laws 1912, § 7281. That statute simply said that the punishment of death should be inflicted by hanging the defendant by the neck until he is dead, or by shooting him, at his election. The present statute provides that the judgment of death shall be inflicted by the administration of lethal gas, and that a suitable and efficient inclosure and proper means for the administration of such gas for the purpose shall be provided. We cannot see that any useful purpose would be served by requiring greater detail. Certainly, the statute infringes no provision of the Constitution."

§ 36.04 of the California Penal Code simply provides: "The judgment of death shall be inflicted by the administration of [a] lethal gas." Faced with a constitutional challenge of vagueness similar to the one in the instant case, the California Supreme Court upheld the statute, citing *Gee Jon v. State,* supra. See *People v. Daugherty,* supra; *In re Anderson,* supra. Our review of statutes from other jurisdictions specifying the mode of execution fails to reveal any that set forth a detailed blueprint for inflicting the death penalty.[10] And we have

10. See:
 *Alabama:* Code of Alabama, Title 15, § 343.
 *Arkansas:* Arkansas Statutes Annotated, § 43–2611.
 *Colorado:* Colorado Revised Statutes 1973, § 16–11–402.
 *Connecticut:* Connecticut General Statutes Annotated, § 54–100.
 *Delaware:* Delaware Code Annotated, Title 11, § 4209.
 *District of Columbia:* District of Columbia Code Encyclopedia, Chapter 7, § 23–701.
 *Florida:* West's Florida Statutes Annotated, § 922.10.
 *Idaho:* Idaho Code, § 19–2717.

 *Illinois:* Smith-Hurd Illinois Annotated Statutes, Code of Criminal Procedure, ch. 38, § 119–5.
 *Kentucky:* Kentucky Revised Statutes, § 431.220.
 *Louisiana:* Louisiana Revised Statutes, § 15:569.
 *Maryland:* Annotated Code of Maryland 1957, Article 27, § 73.
 *Massachusetts:* Massachusetts General Laws Annotated, Chapter 279, § 46.
 *Mississippi:* Mississippi Code 1972, Annotated, § 99–19–51.
 *Missouri:* Vernon's Annotated Missouri Statutes, § 546.720.

not found a case which has declared any such statute unconstitutionally vague.[11]

 While neither the exact substance to be injected nor the procedure surrounding the execution is expressly set forth in Article 43.14, supra, we cannot conclude that failure to specify the exact substances and the procedures to be used render the statute unconstitutionally vague. The statute here, unlike penal statutes, was not intended to give fair notice of what specific behavior or elements constitutes a criminal offense. As in *Langford v. State*, 532 S.W.2d 91, 94 (Tex.Cr.App.1976), ". . . the question before us is not the definition of what constitutes an offense." The context of the statute is a public statement of the general manner of execution. In this sense the statute is sufficiently definite.

Appellant argues that since the lethal substance to be used is not specifically set forth in the statute, the Director could choose a substance which would cause an agonizing death and result in the imposition of cruel and unusual punishment. In *State v. Gee Jon*, supra, where the Nevada statute only specified the use of a lethal gas without stating what kind of gas, the court wrote:

"No doubt gas may be administered so as to produce intense suffering. It is also

*Montana*: Revised Codes of Montana 1947, § 95–23–3.
*Nevada*: Nevada Revised Statutes, Vol. VI, § 176.355.
*New Mexico*: New Mexico Statutes, § 41–14–11.1 et seq.
*New Jersey*: New Jersey Statutes Annotated, Chapter 165, § 2A:165–1.
*New York*: 10B McKinney's Consolidated Laws of New York, Correction Law, § 112 and § 662.
*North Carolina*: General Statutes of North Carolina § 15–188.
*Ohio*: 29 Page's Ohio Revised Code Annotated, § 2949.22.
*Pennsylvania*: 19 Purdon's Pennsylvania Statutes Annotated, § 1121.
*South Carolina*: South Carolina Code of Laws of South Carolina, § 55–373.
*Tennessee*: Tennessee Code Annotated, § 40–3117.
*Vermont*: Vermont Statutes Annotated, Chapter 221, T. 13, § 7106.
*Washington*: Revised Code of Washington Annotated, § 10.70.090.

true that one may be executed by hanging, shooting, or electrocution in such a bungling fashion as to produce the same result. But this is no argument against execution by either method . . . We must presume that the officials intrusted with the infliction of the death penalty by the use of gas will administer a gas which will produce no such results, and will carefully avoid inflicting cruel punishment. That they may not do so is no argument against the law."

 It will not be presumed that the Director will act in an arbitrary manner. See and cf. *Nichols v. Dallas*, 347 S.W.2d 326 (Tex.Civ.App.—Dallas, 1961).

 Obviously the Texas Legislature substituted death by lethal injection as a means of execution in lieu of electrocution for the reason it would be a more humane and less spectacular form of execution.[12] Like the Nevada court, we must presume that the Director of the Department of Corrections and the executioner will administer a lethal substance that will avoid inflicting cruel and unusual punishment. The evidence produced indicated that the Director has taken steps to insure that death by injection will be as painless as possible.

*Wyoming*: Statutes 1957, § 7–391 and 392.

11. See Statute Note, "Capital Punishment—Texas Statutes Amended to Provide for Execution by Intravenous Injection of a Lethal Substance," 9 *ST. MARY'S LAW JOURNAL* 359, 363, footnote # 41 (1977).

12. See Statute Note, "Capital Punishment—Texas Statutes Amended to Provide for Execution by Intravenous Injection of a Lethal Substance," 9 *ST. MARY'S LAW JOURNAL* 359, 361, footnote # 22 (1977). See and cf. Acts 1923, 38th Leg., 2nd C.S., ch. 51, p. 111, § 14 (statute authorizing electrocution in lieu of hanging as a means of imposing the death sentence).

We believe that the Legislature's judgment in amending Article 43.14, supra, is consistent with the often quoted expression from *Trop v. Dulles*, supra, that the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." 356 U.S. at 101, 78 S.Ct. at 598.

The Eighth Amendment to the United States Constitution and Article I, § 13 of the Texas Constitution require the Director and executioner to act in a manner to avoid cruel and unusual punishment. Appellant's contention as to the vagueness and uncertainty of the lethal substance to be used is overruled. In passing upon this, it is not our place to determine if a more precise statute could have been drafted or whether the Legislature should give further consideration to the matter. Our duty is only to determine if the current statute can pass constitutional muster. We conclude that it does.

In a related question petitioner also urges that said Article 43.14 constitutes an improper delegation of legislative power to the Director of the Department of Corrections. He argues that the statute permits the Director to determine the lethal substance to be used and thus allows him legislative authority in violation of the State Constitution.[13]

"It is a well recognized rule that the legislature may not delegate its legislative powers, except as expressly permitted in the constitution, and any attempt to commit those powers to another agency is invalid. But it is also established that the legislature possesses many powers that may be exercised by it either directly or through the agency of another body. And it is difficult to define clearly the line between an unlawful delegation of legislative power and a proper grant of authority to perform acts not strictly legislative . . ." 12 Tex.Jur.2d, Constitutional Law, § 62, pp. 406–407.

Despite the general rule against the delegation of the power of general legislation, there are many powers that may be delegated by the Legislature. When the Legislature itself cannot practically or efficiently perform the functions required, it has the authority to designate some agency to carry out the purposes of such legislation. The trend of modern decisions is to uphold such laws. See 12 Tex.Jur.2d, Constitutional Law, § 65, pp. 409–410; *Trimmier v. Carlton*, 116 Tex. 572, 296 S.W. 1070 (1927); *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100 (Tex.Civ. App.—Amarillo, 1971, writ ref'd., n. r. e.).

Generally, a legislative body, after declaring a policy and fixing a primary standard, may delegate to the administrative tribunal or officer power to prescribe details, *Margolin v. State*, 151 Tex.Cr.R. 132, 205 S.W.2d 775 (1947); *Williams v. State*, 146 Tex.Cr.R. 430, 176 S.W.2d 177 (1943), such as to establish rules, regulations or minimum standards reasonably necessary to carry out the expressed purpose of the act. *Beall Medical Surgical Clinic and Hospital, Inc. v. State Board of Health*, 364 S.W.2d 755 (Tex.Civ.App.—Dallas, 1963), and cases there cited.

Thus, the existence of an area for exercise of discretion by an administrative officer under delegation of authority does not render delegation unlawful where standards formulated for guidance and limited discretion, though general, are capable of reasonable application. *Nichols v. Dallas*, supra, and cases there cited. So long as the statute is sufficiently complete to accomplish the regulation of the particular matters falling within the Legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with the administration of the statute. *Commissioners Court of Lubbock v. Martin*, supra.

---

**13.** Article II, § 1 of the Texas Constitution is the separation of powers clause which prohibits any of the three branches of government from exercising any power properly attached to the other branches of government. Said clause provides:

"Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

In *Langford v. State*, supra, this court decided that Article 6701*l*-5, V.A.C.S., did not contain an unconstitutional delegation of legislative powers to the Texas Department of Public Safety in allowing said department to approve methods of breath testing nor in authorizing said department to ascertain the qualifications and competence of individuals who conduct breath testing. See and cf. *Ex parte Smith*, 441 S.W.2d 544 (Tex.Cr.App.1969).

■ The Legislature has determined that the penalty for capital murder should be death or life imprisonment. V.T.C.A., Penal Code, § 12.31. This is within the constitutional power vested in the Legislature to enact laws which include the right to define crimes and the punishment therefor. *Dendy v. Wilson*, 142 Tex. 460, 179 S.W.2d 269 (1944). By the amendment to said Article 43.14, the Legislature changed the mode of execution when the death penalty is imposed. It provided that the new mode of execution shall be by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death. The Legislature placed a time limitation on the date of execution following sentence and provided for the time of day when the execution shall take place and provided the execution procedure was to be determined and then supervised by the Director of the Department of Corrections.

It appears that the Legislature has declared a policy and fixed a primary standard and delegated to the said Director power to determine details so as to carry out the legislative purpose which the Legislature cannot practically or efficiently perform itself. The statute is sufficiently complete to accomplish the regulation of the particular matters falling within the Legislature's jurisdiction.

■ While the power to determine the validity of a statute rests with the courts, *Ex parte Halsted*, supra, as noted earlier, there is a presumption of validity when such question is to be passed upon. See *Smith v. Davis*, supra. And such presumption obtains until the contrary is shown beyond a reasonable doubt. *Trapp*

*v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946); *Williams v. State*, 514 S.W.2d 772 (Tex.Civ.App.—Beaumont, 1974). An act will not be declared unconstitutional unless the Legislature has clearly exceeded its powers. *Lyle v. State*, 80 Tex.Cr.R. 606, 193 S.W. 680 (1917). Statutes should not be annulled by the courts merely because doubts may be suggested as to their constitutionality. *Lawson v. Baker*, 220 S.W. 260 (Tex.Civ.App.—Austin, 1920); *King v. Terrell*, 218 S.W. 42 (Tex.Civ.App.—Austin, 1920).

■ We reject petitioner's contention that said Article 43.14 violated the constitutional prohibition by an unauthorized delegation of legislative power.

■ Petitioner also asserts that said Article 43.14 allows the Director to act arbitrarily in choosing a lethal substance to be injected without a public notice, a hearing and a procedure for review of his choice of such substance. He contends that due process is violated by failure to provide for such procedure. We are not cited to nor have we found any authority to support the assertion that due process requires such notice, hearing and review in this context. Nonetheless, it appears from Director Estelle's affidavit in the record that his choice of sodium thiopental was an informed one and that in selecting the lethal substance to be used he complied with a basic principle of administrative law by first ascertaining facts to support the final choice of the substance. See *Texas Motor Coaches v. Railroad Commission*, 41 S.W.2d 1074 (Tex. Civ.App.—Austin, 1931, no writ history).

Petitioner also urges that the said Article 43.14 is in irreconcilable conflict with Article 6166j, V.A.C.S., which provides in part:

"The Texas Department of Corrections shall employ a director, who shall possess qualifications and training which suit him to manage the affairs of a modern correctional institution, and it shall be his duty to carry out the policies of the Texas ·Department of Corrections . . . The director, with the consent of the Texas Department of Corrections, *shall have*

*power to prescribe reasonable rules and regulations governing* the humane treatment, training, education, rehabilitation and *discipline of prisoners,* and to make provision for the separation and classification of prisoners according to sex, age, health, corrigibility, and character of offense upon which the conviction of the prisoner was secured. Neither the Department of Corrections nor the director may discriminate against a prisoner on the basis of sex, race, color, creed or national origin." (Emphasis added.)

The Texas Board of Corrections (Articles 6166a and 6166b, V.A.C.S.) has the responsibility for the management of the Department of Corrections (Article 6166g, V.A.C.S.), and it is this Board which has the power to select and remove the Director (Article 6166j and Article 6166k, V.A.C.S.) and prescribe the reasonable rules and regulations mentioned above.

■ We find no conflict between the two statutes as urged by petitioner. There is no requirement that the selection of a lethal substance for use in inflicting death by injection must be approved by the Board before it can be used. The infliction of death does not fall under any of the items concerning which the Board has the authority to make rules and regulations. We know of no just reason why the Legislature does not have the power to impose on the Director the authority to select the lethal substance to cause death independent of the said Board's approval. If the Legislature had wanted to so provide for prior approval by the Board, it could have so provided. In the absence of such provision, we do not construe said Article 6166j as being in conflict with said Article 43.14.

■ Petitioner lastly claims that Article 37.071(a), V.A.C.C.P., as applied is unconstitutional because it prevents the jury from considering a defendant's mental condition as a mitigating factor in relation to the two or possibly three statutory special issues to be submitted to the jury at the penalty stage of a capital murder trial. This court in construing Article 37.071, supra, has never limited admissible evidence to solely ag-

gravating or mitigating circumstances. The phrase "any matter that the court deems relevant to sentence" [14] in Article 37.071(a), supra, refers to virtually any type of probative matter. The only limitation is that the trial court in its discretion must consider the evidence to be relevant to punishment. See *Robinson v. State,* 548 S.W.2d 63 (Tex.Cr.App.1977), and the cases cited therein. Moreover, the jury in answering the special issues may properly consider all the evidence adduced during both the guilt and punishment phases of the trial. This could include evidence of a defendant's mental condition—whether such evidence be characterized as an "aggravating" or "mitigating" factor. Thus, Article 37.071(b), supra, does not prevent the jury from considering a defendant's mental condition as a mitigating factor.

The relief prayed for is denied.

VOLLERS, J., not participating.

---

14. The word "sentence" is obviously used as being synonymous with punishment.