ACCEPTED
13-14-00692-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/17/2015 3:33:10 PM
DORIAN RAMIREZ
CLERK

CAUSE NO. 13-14-00692-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/17/2015 3:33:10 PM
DORIAN E. RAMIREZ
Clerk

## JOHN KIRBY
### Appellant

## V.

## THE STATE OF TEXAS
### Appellee

APPEAL FROM THE 319th JUDICIAL DISTRICT OF NUECES COUNTY, TEXAS, IN TRIAL CAUSE NO. 13-CR-1711-G

APPELLANT'S BRIEF

**TRAVIS BERRY**

**Texas Bar No. 24059194**
**P.O. Box 6333**
**Corpus Christi, Texas 78466**
**Telephone: (361) 673-5611**
**Facsimile:  (361) 442-2562**
**travisberrylaw@gmail.com**

**ATTORNEY FOR APPELLANT**

ORAL ARGUMENT IS REQUESTED

# IDENTITY OF INTERESTED PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellant lists the following persons who have an interest in the appeal:

**JUDGES:** Hon. David Stith
319th District Court
901 Leopard
Corpus Christi, Texas 78401

**PARTIES:**

**COUNSEL FOR APPELLANT:**

<u>John Kirby - Appellant</u>
TDC#: 01968206
Garza East Unit
4304 HWY. 202
Beeville, Texas 78102

J. Esequiel 'Zeke' Ramos Jr.
Texas Bar No. 16508030
7213 Lindenwood Dr.
Corpus Christi, TX 78414

Steven Giovannini
Texas Bar No. 24002143
P.O. Box 81312
Corpus Christi, TX 78468
Telephone: 361-510-5981

Travis Berry        (Appeal)
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, TX 78466-6333
Telephone: (361) 673-5611
Facsimile: (361) 442-2562

The State of Texas - Appellee

**COUNSEL FOR THE STATE:**

Mark Skurka
Nueces County District Attorney
Texas Bar No. 18475570
901 Leopard - Rm. 206
Corpus Christi, Texas 78401
Telephone: (361) 888-0410

Kelly Palmarozzi
Assistant District Attorney
Texas Bar No. 24049416

iii.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................... ii.

TABLE OF CONTENTS ......................................... iii.

INDEX OF AUTHORITIES ...................................... iv.

STATEMENT OF THE CASE ..................................... vi.

ISSUES PRESENTED ......................................... vii.

    ISSUE NO. 1:    Defense counsel rendered ineffective assistance when (1) verbally proffering to the trial court, (2) proffering in Appellant's written guilty plea, and (3) advising Appellant, that probation was an available punishment for a Habitual Felony Offense under Texas Penal Code §12.42(d).

    ISSUE NO. 2:    Texas law which allows an attorney to also act as a defendant's bondsman is an impermissible conflict of interest.

STATEMENT OF FACTS ......................................... 1

SUMMARY OF ARGUMENT ....................................... 7

ARGUMENT .................................................. 8

PRAYER FOR RELIEF ......................................... 23

CERTIFICATE OF SERVICE .................................... 24

CERTIFICATE OF COMPLIANCE ................................. 25

APPENDIX .................................................. 26

# INDEX OF AUTHORITIES

CASES                                                                          PAGE

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . 14, 15

*Cardenas v. State*, 960 S.W.2d 941 (Tex. App. - Texarkana 1998) . . . . . . . . 15, 16

*Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App.1978) . . . . . . . . . . . . . . 17

*Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . 17

*Ex parte Morse*, 591 S.W.2d 904 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . 9

*Goodspeed v. State*, 187 S.W.3d 390 (Tex. Crim. App. 2005) . . . . . . . . . . . . 9, 14

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App 1999) . . . . . . . . . . . . 14, 15

*Hill v. Lockhart*, 474 U.S. 52 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 16

*Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998) . . . . . . . . . . . . . . . 10

*Lawrence v. State*, 240 S.W.3d 912 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . 17

*Mitchell v. State*, 68 S.W.3d 640 (Tex. Crim. App.2002) . . . . . . . . . . . . . . . . . 15

*Roberts v. State*, 220 S.W.3d 521 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . 9

*Rodriguez v. State*, 93 S.W.3d 60 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . 17

*Russell v. State*, 711 S.W.2d 114 (Tex. App.– Houston [14th.] 1986, pet. ref'd) . 15

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . 8, 14

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . 8, 9

**STATUTES AND RULES**                                              **PAGE**

Texas Occupations Code - §1704.163 ............................ 7, 17, 23

Texas Penal Code §12.42(d) ............................ vi, viii, 7, 8, 16

Texas Rule of Appellate Procedure 21.2 ............................ 10

U.S. CONST. amend. VI. ............................ 8, 22, 23

**ADDITIONAL MATERIALS**

American Bar Association's Criminal Justice Section -
   Standards of defense attorney conduct .................. 12, 13, 19-21

American Bar Association Formal Opinion 432 ............................ 21

Dayla S. Pepi and Donna Bloom, entitled "Take the Money or Run:
   the Risky Business of Acting as Both Your Client's Lawyer
   And Bail Bondsman." 37 St. Mary's L. J. 933 (2006) ............. 19, 20

**TO THIS HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant, John Kirby, was accused in cause number 13-CR-1711-G by a one count indictment, of driving while intoxicated (DWI) on May 18, 2013.[1] This DWI charge was enhanced under Texas Penal Code §12.42(d) to a Habitual Felony Offender charge carrying a twenty five to ninety-nine year punishment range. (CR5)[2]

On November 10, 2014, Appellant entered a plea of guilty without a plea bargain and punishment was assessed by the trial court. (CR24) Appellant was sentenced to thirty (30) years incarceration to be served concurrently with the thirty (30) year sentence for another Habitual Felony Offender DWI charge in cause number 14-CR-2951-G, in the Texas Department of Criminal Justice Institutional Division. (CR213, RR2 - 39, 40)

Appellant filed his timely notice of appeal on November 17, 2014, to appeal the conviction and sentence in this case. (CR216)

---

[1] This case is in conjunction with an additional Habitual Felony Offender DWI charge under cause number 14-CR-2951-G being appealed under COA#: 13-14-00691-CR wherein the same punishment (30 years) was assessed by the trial court to run concurrently. (CR213)

[2] Citations to the Clerk's Record is CR followed by the page number, and citations to the reporter's record will list the volume (RR#) followed by the page number within that volume.

# ISSUES PRESENTED

**ISSUE NO. 1:** Defense counsel rendered ineffective assistance when (1) verbally proffering to the trial court, (2) proffering in Appellant's written guilty plea, and (3) advising Appellant, that probation was an available punishment for a Habitual Felony Offense under Texas Penal Code §12.42(d).

**ISSUE NO. 2:** Texas law which allows an attorney to also act as a defendant's bondsman is an impermissible conflict of interest.

# STATEMENT OF FACTS

On November 10, 2014, pled guilty without a plea bargain to two felony DWI cases, both which were enhanced to Habitual Felony Offenses producing a punishment range of twenty five (25) to ninety nine (99) years. (RR2 - 9, 10) The trial court sentenced Appellant to thirty (30) years on both cases to run concurrently. (CR152)

These separate DWI cases saw representation by two different attorneys. Appellant was arrested for DWI on May 18, 2013, in cause number 13-CR-1711-G. He made bond and retained attorney Steven Giovannini to represent him. While on bond, Appellant was again arrested for DWI on February 1, 2014, in cause number 14-CR-2951-G. While incarcerated in the Nueces County Jail, attorney Esequiel "Zeke" Ramos visited Appellant at the jail and bonded him out.

Mr. Ramos is a Corpus Christi attorney that is well known as a "bonding" attorney, one that will sign you out of jail for attorney's fees and also handle the legal representation at court.[3] Mr. Ramos joined in Appellant's representation with attorney Steven Giovannini when he bonded Appellant out of jail for a fee. (See clerk's record in 13-14-00692-CR, page 10) The clerk's record in this case does

---

[3] At the plea hearing, the trial court addressed Appellant's confusion about his representation by Mr. Ramos after Mr. Ramos acted as his bail bondsman: " you have counsel with you today, and I assume that's probably because he bonded you out." (RR2 - 8)

1

not contain a motion to substitute from Mr. Ramos or a similar "motion to join Steven Giovannini's representation" as in the other DWI. Rather, Mr. Ramos only filed a notice of appearance. (CR21)

When Appellant appeared in court to enter his guilty plea, he was very confused about the merits of the State's case as well as the ramifications of entering such a plea. (Appendix - Appellant's affidavit) Due to the circumstances of having two different DWI charges and having hired Steven Giovannini only to be later represented in court by his bondsman, Appellant was not sure of what was going on:

> THE COURT: All right. If there's anything we go through that you don't understand, will you let me know?
>
> THE DEFENDANT: What I don't understand, sir, is that I had retained a lawyer, Mr. Stephen Giovannini, and I paid him his court fees -- I mean, his fees that he wanted, and he said that -- that the bond fees and the -- and his payment fees would coincide together and they would, you know, be together.
>
> THE COURT: Uh-huh.
>
> THE DEFENDANT: You know? And I paid him his fees, and I got the receipts in my pocket to show it, and he charged me $2600 for it. And for some reason -- you know, he told me that I hadn't paid him enough fees, but it was clear to the fact that when we ade the contract in his office that -- that, like I said, it was going to coincide together, you know.
>
> THE COURT: Okay.

THE DEFENDANT: The bond and his fee. And I'm just not -- I'm not understanding why he dropped me like that and he -- and Mr. Ramos here was taking my case afterwards. (RR2 - 7, 8)

The Court was not concerned with Appellant's confusion over his dual representation, it only asked if Mr. Ramos had "gone over everything" with him and admonished Appellant of the range of punishment for the charge. (RR2 - 8) Later in the hearing the trial court inquired whether Appellant understood everything:

THE COURT: All right. One other thing, Mr. Kirby. In both of these cases you signed what are called judicial confessions. Do you understand that? These documents right here. Is that your signature on the back part of it?

THE DEFENDANT: I'm not understanding what maybe I signed.

THE COURT: Did you sign these? This is called a judicial confession and stipulation of evidence. Do you remember signing that document?

THE DEFENDANT: My name is on there, I guess I did...... But I don't -- I'm not sure what it was for, though, you know. Is that for evidence or --

THE COURT: Right. It's basically a judicial confession. Did you not understand you were signing a judicial confession?

THE DEFENDANT: No, sir.

THE COURT: Okay. Do you want to take time to talk to your attorney about it?

THE DEFENDANT: Yes, sir. (RR2 - 16, 17)

3

Although the trial court sought to remedy Appellant's obvious confusion about what was happening to him (legal procedure), Appellant maintains on appeal that - because of the lawyer shuffle he had experienced and a total lack of communication with Mr. Ramos - he truly did not understand all of the proceedings that resulted in his thirty year sentence. (Appendix - Appellant's affidavit)

When admonished by the trial court on Appellant giving up his right to a jury trial, Appellant states that he cannot intelligently do such as he was without the requisite information to make that decision:

> THE DEFENDANT: Yes, sir, but it's like I haven't had enough, you know, insight to my case, or my attorneys really haven't gotten with me to see if there's anything that to have a jury trial, you know. So I don't know if, you know, like I -- Mr. Giovannini, all he did was ever take my money and he never did sit down and talk to me about my case or anything, you know. And I feel like I -- you know, I don't know nothing about my case.

The trial court stated that the case had previously been set for a guilty plea, its current status was that it was set for a guilty plea, that the court had previously granted Mr. Ramos a request for continuance and, due to the age of the case, the trial court was "not giving you any more additional time today" and informed Appellant he was "waiving your right to trial by jury, waiving your right to remain silent, enter your plea of guilty, and then I'm going to decide punishment on this

case." Appellant admitted to having a drinking problem and made a plea for some form of treatment such as SAF-PF. (RR2 - 19)

The court asked Appellant whether he signed his plea paperwork freely and voluntarily. This plea paperwork contained an application for probation signed by Appellant and entered by Mr. Ramos even though it was not an available option by law. (CR38, also see clerk's record in 13-14-00691-CR, page 35) Both sets of plea paperwork from Mr. Ramos in each case also list Appellant's offense as a third degree felony, not the habitual offender charge Appellant was actually facing. (CR30, also see clerk's record in 13-14-00691-CR, page 27)

After Appellant was finally sworn in, he answered defense counsel that he understood his charge was a habitual offender case but that he should be given a chance at re-hab followed by probation. (RR2 - 22) Appellant was steadfast in this position, one of seeking re-hab and probation in the face of a mandatory 25-99 year Habitual Offense, due to the advise he received from Mr. Ramos. (RR2 - 22; Appendix - Appellant's affidavit)

In support of Appellant's request for probation, defense counsel then mentioned a felony conviction for evading arrest from Appellant's past to show Appellant had previously completed a felony probation. (RR2 - 22, 23) On cross-examination, the State recounted Appellant's entire criminal history to which

5

Appellant was in agreement with. (RR2 - 24-28)

The defense asked the trial court to "consider something other than a long sentence" and to grant him probation with treatment even though Appellant faced a mandatory minimum of twenty five years imprisonment. (RR2 - 35, 36) The State rebutted this stating that a plea agreement could not be reached and that Appellant was "not even eligible for it (probation)" (RR2 - 38)

The trial court found Appellant guilty of DWI, found the habitual offender enhancements to be true, and sentenced Appellant to thirty (30) years in the institutional division of the Texas Department of Criminal Justice to run concurrently with the same sentence in cause number 14-CR-2951-G.

## SUMMARY OF THE ARGUMENT

**ISSUE ONE:**     Appellant was represented by counsel at his guilty plea but this plea was made without effective representation. Before entering his plea paperwork and the guilty plea, defense counsel led Appellant to believe that he could get probation rather than the mandatory 25-99 year punishment. It is clear from the record that defense counsel was wholly misinformed about the punishment realities of a habitual offender case under Texas Penal Code §12.42(d) as he repeatedly asked the court to probate the sentence. Counsel's impossible probation requests lends credence to Appellant's claims that counsel did misguide Appellant before he entered his plea.

**ISSUE TWO:**     Texas Occupations Code - Section 1704.163 - Attorney Exemption, allows for attorney's to play a dual role of attorney/bondsman which is a clear conflict of interest that goes against the rest of the nation's stance on the subject and goes against the American Bar Association's stance on the subject. This conflict of interest can easily lead to unethical defense practices and ineffective assistance as seen in the instant case.

# ARGUMENT

**ISSUE NO. 1:** Defense counsel rendered ineffective assistance when (1) verbally proffering to the trial court, (2) proffering in Appellant's written guilty plea, and (3) advising Appellant, that probation was an available punishment for a Habitual Felony Offense under Texas Penal Code §12.42(d).

## STANDARD OF REVIEW AND APPLICABLE LAW

A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); U.S. CONST. amend. VI.

To determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel, we apply the United States Supreme Court's two-pronged *Strickland* test. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* standard applies to a challenge to a guilty plea based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52 (1985). Under *Hill v. Lockhart*, where a defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. *Id.* at 52.

Under *Strickland*, the defendant must show that counsel's advice was deficient and, but for that advice, there is a reasonable probability that he would

8

have pled not guilty. See *Hill* at 53. The assessment of whether a defendant received effective assistance of counsel is made on a case by case basis by looking to the totality of the representation and the particular circumstances of the case. *Thompson*, 9 S.W.3d at 813. Any claim of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.*

In the case of a silent record, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.' " *Roberts v. State*, 220 S.W.3d 521, 533 (Tex.Crim.App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim.App. 2005)

## ISSUE ONE ARGUMENT

Counsel must advise the defendant how the law applies to the facts of the case to ensure that the guilty plea is knowing and voluntary. *Ex parte Morse*, 591 S.W.2d 904 (Tex. Crim. App. 1980).

Appellant's guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him that he was eligible for probation on a habitual offense. Appellant openly expressed concern with his trial

9

counsel at his plea. Appellant provided the court with his own *de facto* claims of ineffective assistance of counsel[4] and asked the trial court for more time to determine whether to proceed to trial which was denied. (RR2 - 18)

In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Under Texas Rule of Appellate Procedure 21.2, a motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record. Here, the record is more than adequate to substantiate Appellant's claim of ineffective assistance of counsel on direct appeal.

Appellant believed his lawyer when he signed all of his plea paperwork that *probation was a viable option.* (CR35, Appendix - Appellant's affidavit) This, herein, induced Appellant to enter such guilty plea to this habitual offender charge. In support of this search for a probated sentence, Appellant made certain admissions of guilt in an effort to garner sympathy for alcoholism treatment. (RR2 - 13, lines 9-20) Once Appellant realized the true nature of the gravity of his own situation, that he was going to be sentenced to a significant amount of

---

[4] Appellant informed the trial court that his attorney's (1) have not adequately informed him about his situation, and (2) a determination of whether to go to trial upon the evidence was never made or communicated to him.

10

incarceration rather than the probation defense counsel caused him to believe was available, he asked for "more time" or essentially a continuance which was denied. (RR2 - 18, 19)

Defense counsel did mention the habitual offender status during his direct examination of Appellant - "Basically, you understand that they're charging you as a habitual felony offender based on a burglary of a building offense that occurred in 1996; is that correct?" - counsel simultaneously argued that Appellant should receive some form of community supervision which should show that counsel was ignorant of what a "habitual felony offender" charge means and what that offender must receive as punishment under Texas law.

In addition, counsel's erroneous argument was made after having been present when the trial court admonished Appellant that the minimum potential sentence would be an incarceration of at least twenty-five years[5]:

> •"I'm asking the Court to consider something other than a long sentence. Apparently with the same history that he has, back in 2006 he got probation and he completed it successfully. To me that says a lot. He had the same history, everything the same. These offenses that are part of the enhancement happened almost 30 years ago.................

> •I think sending him to TDC is not the best way to deal with his problems. I think it's a misuse of the taxpayers' money. I think he needs to be sent somewhere where he needs to get help for his problems, other than just send

---

[5] RR2 - 8, 9

him to TDC on a long sentence.

•I would request the Court consider sending him to some kind of a re-hab place, some Safe-P with probation. He's shown in the most recent felony case that he picked up prior to these two cases that are pending now, that he could successfully complete probation. I don't know why they didn't address his issues in that probation. Maybe they weren't brought up, but he's shown he can actually complete probation. So I would ask the Court to consider giving him probation by sending him to get some kind of rehab help for his problem."    (RR2 - 35, 36)

The State was quick to respond to the obvious problem with defense counsel's impossible argument for probation:

"Your Honor, it's a 25 to life case. He's pled true to both of those enhancements. I think -- and the judgments are there. I believe that the Court must find that there is enough evidence to find those two enhancement paragraphs true. I understand that now defense doesn't like that those two are being brought up from so long ago, but that's what the law states." (RR2 - 36)

Part VIII of the American Bar Association's Criminal Justice Section Standards of defense attorney conduct addresses defense counsel's duty at sentencing. Standard 4-8.1 states that at sentencing[6]:

(a) Defense counsel should, at the earliest possible time, be or become familiar with all of the sentencing alternatives available to the court and with community and other facilities which may be of assistance in a plan for meeting the accused's needs. Defense counsel's preparation should also

---

[6]

http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_d func_blk.html#3.5

include familiarization with ...... the normal pattern of sentences for the offense involved....... The consequences of the various dispositions available should be explained fully by defense counsel to the accused.

Reading the transcript of Appellant's plea hearing and the plea paperwork signed by defense counsel (CR35), shows that defense counsel was wholly uninformed about the consequences of Appellant's plea as it related to punishment. Defense counsel's performance is woefully short of what the ABA proscribes in Standard 4 - 8.1.

During the punishment hearing, clearly Appellant's decision to proceed with an open plea was based on his hope of receiving community supervision from the trial court. Appellant insists that he entered the courtroom believing that he had a chance at probation. (See Exhibit A - Appellant's affidavit) This is corroborated by his attorney's persistence that the trial court grant a probated sentence in the face of a mandatory twenty-five to ninety-nine year sentence. Appellant also persisted in a desire to continue counseling outside the confines of prison. (RR2 - 19, 20)

Appellant vehemently asserts that his decision to plead guilty was based solely on his attorney's advise that they would be asking the court for probation, both on paper (CR35) and in person (RR2 - 35, 36). The record substantiates

13

Appellant's claim that his decision to plead guilty was based on his attorney's erroneous advice that the trial court could grant community supervision which was ineffective assistance on the guilty plea as a matter of law.

Although the trial court attempted to remedy this in its admonishments before accepting Appellant's guilty plea, those admonishments were given after Appellant had filled out and filed his plea paperwork where his attorney proffered an application for probation because he truly believed probation was a viable option.

Such advice from his attorney was clearly erroneous, and the reliability of Appellant's claim of ineffectiveness is substantiated by defense counsel's own impossible argument for probation. There is no possibility that defense counsel's handling of this case could have been based on legitimate trial strategy. *Goodspeed* at 392. Therefore, Appellant has established that his attorney's performance fell below an objective standard of reasonableness for criminal defense in the State of Texas. See *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App 1999).

We must next consider whether Appellant has demonstrated the record supports a finding that counsel's deficient performance prejudiced Appellant's defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Bone v. State*, 77 S.W.3d

14

828, 833 (Tex. Crim. App. 2002); *Hernandez*, 726 S.W.2d at 55. "This means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App.2002); see also *Bone* at 833.

Appellant believes that the record in this case affirmatively demonstrates that, but for counsel's errors, the result of the proceeding would have been different on November 10, 2014. Appellant would not have entered court to give a plea of guilty to a 25-99 habitual offender case and voluntarily accept such fate without a trial. See *Cardenas v. State*, 960 S.W.2d 941, 948 (Tex. App. - Texarkana 1998) (the appellate court found harm as a result of deficient performance).

Although Appellant made certain admissions at his guilty plea (RR2 - 13), those admissions were made in an effort to bolster the request for probation and they were given without effective guidance from counsel. The record supports the contention that the appellant's plea was, in fact, induced by significant misinformation before the hearing. See *Russell v. State*, 711 S.W.2d 114, 116 (Tex.App.--Houston [14th Dist.] 1986, pet. ref'd).

The record also reflects probable misunderstanding of the situation by defense counsel (CR35, RR2 - 35, 36) and raises the probability that such

15

incorrect information was provided to the defendant in preparation for the plea proceeding. *Cardenas* at 947.

Under *Hill v. Lockhart*, 474 U.S. 52 (1985), where a defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases.[7] Basic competence in practicing criminal defense in Texas is to know that a habitual felony offender charge under Texas Penal Code §12.42(d) cannot, by any means, result in probation.

Had Appellant known this before filling out his plea paperwork just before his hearing on November 10, 2014, he would not have entered that guilty plea to which the trial court proceeded upon. *Hill* at 57. The trial court's admonishments during the hearing are insufficient to place Appellant where he was before filling out his plea paperwork under the informed belief he could receive probation. (Appendix - Appellant's affidavit)

Based on the facts in the case at bar, the appropriate result is to find Appellant received ineffective assistance of counsel before entering his guilty

---

[7] In *Hill*, the defendant knew he was pleading to a charge that would lead him to prison, the erroneous advise in *Hill* dealt with parole eligibility and when he would be released from that prison sentence. The Supreme Court declined relief in *Hill* because the erroneous advice was not shown to have induced the guilty plea, only misinformed the defendant when he would be released. The instant case is distinct because the erroneous advice did induce Appellant's guilty plea and impossible request for probation.

plea.

**ISSUE NO. 2**      Texas law which allows an attorney to also act as a defendant's bondsman is an impermissible conflict of interest.

## STANDARD OF REVIEW AND APPLICABLE LAW

Challenges to the Constitutionality of a Texas statute are reviewed *de novo*. *Ex parte Lo*, 424 S.W.3d 10 (Tex.Crim.App. 2013); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex.Crim.App. 2007) When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002); *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978) The burden normally rests upon the person challenging the statute to establish its unconstitutionality. *Id.*

The Texas Occupations Code - Section 1704.163(a) - Attorney Exemption - allows for an exemption to the Texas licensing of bail bondsmen where the surety/bondsman is an attorney and is also the attorney of the person subject to the bond.

## ISSUE TWO ARGUMENT

Although "attorney bonds" are permitted by a special exemption in Texas, it

17

appears that Texas may be the only state that explicitly allows this practice. The conflict of interest is clear because where a lawyer is both a client's attorney and bondsman, there are conflicting goals between what a criminal defense attorney desires for their client and what a bondsman needs to secure his collateral. During representation in any criminal matter, an attorney acting dually has polar loyalties.

For example, a lawyer might refrain from informing a client about the weakness in their case for fear the client will jump bond, causing the attorney to be out of bond money. This is especially relevant in cases where a defendant is granted bond but is facing a serious sentence due to the nature of the crime or their criminal history.

Under Texas law, this lawyer/bondsman is also allowed to summarily get off the bond and withdraw from the case when certain circumstances arise. A lawyer could be quick to get off a bond in order to protect their assets where there is new (possibly confidential) information, that causes the lawyer to believe that the client may not comply with bond conditions. Also, the lawyer/bondsman may not inform the defendant that they are getting off the bond leaving them at a bond revocation without a lawyer to advocate against it, when money they paid was to assure against this result. In this way, one's lawyer could actually be in control and become a "jailer" awaiting trial to secure that lawyer's assets. This is the

18

antithesis of what the role of a criminal defense lawyer is supposed to be as is taught throughout American law schools and believed in by the public at large.

Under the Criminal Justice Standards as set by the American Bar Association, one's defense attorney is to be a zealous advocate and a person that the defendant can fully confide in rather than being a bondsman who is monitoring and analyzing a defendant in order to make sure they are complying with bond conditions. This is contrary to ABA Standards for Defense 4-3.6. See *infra*.

Texas' allowance of the lawyer/bondsman role also "locks in" a defendant financially regardless of the effectiveness of representation. When a defendant gets a bad feeling about the bondsman/lawyer and later decides that they do not want the lawyer hired to post your bond to also represent them in the case, they are typically trapped and that is just the way the bondsman/lawyer model of representation works. It is almost certain that the lawyer who also serves as the bondsman will tell the client that, if they fire the lawyer, he will go off the their bond putting the defendant back to square one less fees lost on that lawyer. As previously explored, this could result in the defendant being arrested for an insufficient bond before they are able to hire a new lawyer and arrange for a real bail bondsman to assume their bond.

There is an excellent article on point from two law professors, Dayla S. Pepi

and Donna Bloom, entitled "Take the Money or Run: the Risky Business of Acting as Both Your Client's Lawyer And Bail Bondsman."[8] This article fully discusses the practice of attorneys acting as bondsmen, that most states and the American Bar Association (the "ABA") believe that it is unethical for attorneys to also act as their clients' bondsmen. For example, at the time of the article, ABA Formal Opinion 432, ABA's Standards for Criminal Justice 4-3.5, and ethics opinions and/or laws in Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Kansas, Kentucky, Michigan, Minnesota, New York, North Carolina, Oklahoma, Oregon, South Carolina, Virginia, West Virginia, and Wisconsin suggested that this practice is illegal and/or unethical except in limited circumstances.

The ABA outlines its standards for criminal defense attorneys' where potential conflicts of interest exist.[9] (Standard 4 - 3.5 Conflicts of Interest) The following standards in subsections (a) & (j) under ABA Standard 4-3.5 are not followed in Texas when the defense attorney is also the bondsman:

> (a) Defense counsel should not permit his or her professional judgment or obligations to be affected by his or her own political, financial, business,

---

[8] 37 St. Mary's L. J. 933 (2006)

[9] http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_d func_blk.html#3.5

property, or personal interests.

(j) Defense counsel should not act as surety on a bond either for the accused represented by counsel or for any other accused in the same or a related case.

In addition, ABA Formal Opinion 432 finds that:

"A lawyer may post, or arrange for the posting of, a bond to secure the release from custody of a client whom the lawyer represents in the matter with respect to which the client has been detained, but only in those rare circumstances in which there is no significant risk that her representation of the client will be materially limited by her personal interest in recovering the amount advanced."

Any attorney who has bonded someone out is "materially limited by their personal interest in recovering the amount advanced." There is a very large gap between what Texas allows and what the ABA proscribes coupled with what is followed by most other states. The dangers posed by this practice in Texas are clearly seen in this case.

Appellant hired one attorney only to be bonded out and represented by another attorney. He expressed confusion over such practice to the trial court. (RR2 - 8) Appellant proceeded to court with his bondsman attorney for fear that his bond would be forfeited if he did not stick with that attorney landing him back in jail pending trial.

21

The bond attorney (Mr. Ramos) made no contact with Appellant nor made a meaningful investigation into the case before appearing at court to plea Appellant guilty. (RR2 - 18) Mr. Ramos failed to admonish Appellant as to the consequences of a plea to a habitual offender case and at that guilty plea, Mr. Ramos was so ill-informed as to make multiple requests for a probation not allowed by law.

This case shows that when the role of a defense attorney and the role of a bondsman are allowed to be combined into one, the legal representation can take a back seat. Although it is convenient for one's attorney to be able to bond them out, this scenario works fine when the attorney is going to know the basics about the case and exhibit some form of criminal defense competence.

As in the case at bar, where the attorney does not even know that a habitual offender case carries the most penal punishment range in all of Texas (sans capitol cases), it is evident that the "attorney bond" in this case was nothing more than a way to secure a paying client (if they have the funds) who is stuck in jail. Whatever happens to that client after the bond/attorney's fees have been paid is another matter altogether as was the case for Appellant.

## CONCLUSION

Anything that interferes with a criminal defendant's right to effective counsel under the Sixth Amendment should face scrutiny. Texas law does not

allow attorney's to be bondsman, rather it has to create an exemption from such law for attorney's. This exemption within the Texas Occupation code which allows this unusual hybrid bondsman/attorney representation should be abolished. It serves no purpose as every county jail in Texas (and America) has a bail bond office nearby which has their telephone number posted within the jail for inmates in addition to the area phone book.

This Court should hold that the practice in Texas of allowing the dual attorney/bondsman is an impermissible conflict that fails to assure defendant's full protection under the Sixth Amendment to effective counsel.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests this Honorable Court of Appeals uphold his issues on appeal, reverse this case and remand the cause for a trial, hold Texas Occupation Code §1704.163(a) unconstitutional or grant any other relief Appellant is entitled to by law.

Respectfully submitted,

/s/ *Travis Berry*
Travis Berry
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466
T: (361) 673-5611; F: (361) 442-2562
travisberrylaw@gmail.com
ATTORNEY FOR APPELLANT

23

**CERTIFICATE OF SERVICE**

This is to certify that on this March 17, 2015, a true and correct copy of the

Appellant's Brief has been sent via email to the Nueces County District Attorney's

office, 901 Leopard - Rm. 206, Corpus Christi, Texas 78401.

/s/ *Travis Berry*
Travis Berry

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations announced in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.

1. The undersigned certifies that the Initial Brief contains no more than **5,060** words in proportionately spaced typeface, an amount of words within the limits set forth in Rule 9.4(i)(2)(B)

2. The brief has been prepared in proportionately spaced typeface using WordPerfect 12 in 14 pt. Times New Roman. Footnotes have been used and are all accounted for in the above word count.

3. The undersigned acknowledges a material misrepresentation in completing this certificate, or circumvention of the type-volume limits states in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure, may result in the Court striking the brief.

/s/ *Travis Berry*
Travis Berry

# APPENDIX

# AFFIDAVIT

STATE OF TEXAS        *        COUNTY OF NUECES

BEFORE ME, the undersigned authority on this date personally appeared JOHN KIRBY, DOB: 06/16/1962, SID: 10072497, being duly sworn upon affiant's oath states that affiant has read the foregoing affidavit and the factual matters contained therein are within affiant's personal knowledge and are true and correct, and affiant is competent to give this affidavit.

"I am JOHN KIRBY, defendant in cause number 13-CR-1711-G and 14-CR-2951-G, who makes this statement. I made bond on those cases through attorney "Zeke" Ramos who also represented me. I had zero communication or information from Mr. Ramos on how we were to proceed at my plea held on November 10, 2014. Although I knew the pending Driving While Intoxicated charges were felony charges, I did not know anything beyond that.

When I entered the courtroom to enter a plea of guilty without a plea bargain, my attorney led me to believe that I could possibly get probation. I was also led to believe by my attorney that, if the Court rejected my request for probation, I would likely get an approximate sentence of 10 years. When I filled out my plea paperwork and entered my plea of guilty, I did not know that these charges were enhanced to habitual offender status carrying a minimum punishment of twenty five (25) years. I did not know what the punishment range was on these charges until the moment during the open plea when admonished by the Court. Further affiant sayeth naught."



_____
Affiant

Subscribed and sworn to before me the undersigned notary public on this the 21st day of November, 2014.

_____
Notary Public in and for the State of Texas

SEAL

THERESA LYNN LOVEALL
NOTARY PUBLIC
COMMISSION EXPIRES:
10-15-2018