

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00407-CR

THE STATE OF TEXAS                                STATE

V.

FRANK EMPEY                                  APPELLEE

----------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY
### TRIAL COURT NO. CR17613

----------

## DISSENTING OPINION

----------

John Locke discussed the purpose of government in his *Two Treatises of Government*.[1]  Many of his ideas are reflected in Thomas Jefferson's writings,

---

[1]*See generally* John Locke, *Two Treatises of Government* (Peter Laslett ed., Cambridge Univ. Press, 2d ed. 1967) (1690).

including our Constitution.[2]  People join together to create a society and empower their leaders to govern because they seek protection of their lives, liberty, and property.  A government is created and rightfully exists only by the consent of the governed "and is but the expression of their aggregate will, designed to secure and protect them in the enjoyment of life, liberty, and property . . . ."[3]

But, inevitably, tension arises between the enjoyment of life and liberty and the enjoyment of property when claims to property are in conflict.  As Presiding Judge Sharon Keller of the Texas Court of Criminal Appeals has explained,

> The Supreme Court has interpreted the Due Process Clause as having both substantive and procedural components.  The substantive component protects the individual against government action that either lacks a rational basis or unduly infringes on a fundamental right or liberty interest.  A statute that infringes upon a fundamental right or liberty interest violates the substantive component of the Due Process Clause unless the infringement is narrowly tailored to serve a compelling state interest.  A substantive-due-process analysis that is based upon the infringement of a fundamental right or liberty interest must provide a careful description of the asserted fundamental liberty interest.  A fundamental right or liberty interest is one that is deeply rooted in this Nation's history and tradition and implicit in the concept of

---

[2]*See generally* David L. Wardle, *Reason to Ratify:  The Influence of John Locke's Religious Beliefs on the Creation and Adoption of the United States Constitution*, 26 Seattle U. L. Rev. 291 (2002).

[3]*Galveston, H. & S.A. Ry. Co. v. De Groff*, 110 S.W. 1006, 1010 (Tex. Civ. App.—Fort Worth 1908), *rev'd on other grounds*, 102 Tex. 433, 118 S.W. 134 (Tex. 1909).

ordered liberty, such that neither liberty nor justice would exist if (it) were sacrificed.[4]

And as our sister court has pointed out, "Substantive due process protects against the arbitrary and oppressive exercise of government power over a person's life, liberty, or property, regardless of the fairness of the procedures used to implement the government action."[5]

My differences with the majority opinion are founded in such constitutional guarantees of due process. Unfortunately, in expressing my concerns with the statute in question and with the majority opinion, I am not sufficiently skillful to make these concerns clear to the thoughtful and articulate majority. The legislature alone, within the boundaries described by our constitutions, delineates those acts that violate our criminal laws.[6] This obligation may not be delegated to other branches of the government.[7] When statutes are so vague or contain

---

[4]*Fleming v. State*, 455 S.W.3d 577, 589–90 (Tex. Crim. App. 2014) (Keller, P.J., dissenting) (footnotes and internal quotation marks omitted), *cert. denied*, 135 S. Ct. 1159 (2015).

[5]*Garcia v. Kubosh*, 377 S.W.3d 89, 97 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

[6]*See* Tex. Const. art. III, § 1; *Miller v. French*, 530 U.S. 327, 341, 120 S. Ct. 2246, 2255 (2000); *Ex parte Hayward*, 711 S.W.2d 652, 655 (Tex. Crim. App. 1986); *Grant v. State*, 505 S.W.2d 279, 282 (Tex. Crim. App.), *cert. denied*, 417 U.S. 968 (1974); *David v. State*, 453 S.W.2d 172, 179 (Tex. Crim. App. 1970), *vacated in part on other grounds*, 408 U.S. 937, 937, 92 S. Ct. 2862, 2862 (1972); *Sasser v. State*, 131 Tex. Crim. 347, 349, 98 S.W.2d 211, 212 (1936).

[7]*See Ex parte Granviel*, 561 S.W.2d 503, 514 (Tex. Crim. App. 1978) (relying on *Margolin v. State*, 151 Tex. Crim. 132, 138, 205 S.W.2d 775, 778–79 (1947), and *Williams v. State*, 146 Tex. Crim. 430, 438–39, 176 S.W.2d 177, 183

terms that overlap and conflict so that an ordinary person cannot tell which statute he or she has violated or whether he or she has violated a criminal statute, the legislature, and no other branch of government, has the authority to establish certainty in the law.[8] Other branches of government may not determine the elements of an offense on an ad hoc basis.[9] To hold otherwise is to disregard the clear mandate of the due process guarantees of our state and federal constitutions.[10]

Not only must a statute be sufficiently specific to place the ordinary citizen on notice of the forbidden conduct; it must also provide sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement.[11] A

(1943)); *see also In re Johnson*, 554 S.W.2d 775, 781–82 (Tex. Civ. App.— Corpus Christi 1977), *writ ref'd n.r.e.*, 569 S.W.2d 882, 883 (Tex. 1978).

[8]*Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 843 (1972).

[9]*See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–504, 102 S. Ct. 1186, 1193–96 (1982); *Smith v. Goguen*, 415 U.S. 566, 575–82, 94 S. Ct. 1242, 1248–52 (1974); *Grayned v. Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298–99 (1972); *Kramer v. Price*, 712 F.2d 174, 176–78 (5th Cir. 1983), *reh'g en banc granted*, 716 F.2d 284 (5th Cir. 1983), *grant of relief aff'd*, 723 F.2d 1164 (5th Cir. 1984).

[10]*See Grayned*, 408 U.S. at 108, 92 S. Ct. at 2298–99; *Kramer*, 712 F.2d at 178.

[11]*Chicago v. Morales*, 527 U.S. 41, 64, 119 S. Ct. 1849, 1863 (1999) (holding loitering ordinance unconstitutionally vague because it "afford[ed] too much discretion to the police and too little notice to citizens who wish[ed] to use the public streets"); *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989).

statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions.[12]   Lack of notice and the lack of guidelines for law enforcement each provide an independent ground for finding a statute void for vagueness.[13]

A penal statute encourages arbitrary enforcement when it fails to provide clear guidelines, thereby giving law enforcement officials unbounded discretion to apply the law selectively.[14]

The pertinent portion of the theft statute in the penal code provides that no matter how minimal the value, a person commits a state jail felony if "the value of the property stolen is less than $20,000 and the property stolen is" aluminum, bronze, copper, or brass.[15]   At the same time, the occupations code provides a different offense level and therefore a different punishment.   Under the occupations code, theft by purchase, and thereby possession, of stolen regulated metals is a misdemeanor that may be enhanced by evidence of prior

---

[12]*Kolender*, 461 U.S. at 357, 103 S. Ct. at 1858; *Papachristou*, 405 U.S. at 162, 92 S. Ct. at 843.

[13]*Adley v. State*, 718 S.W.2d 682, 685 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 815 (1986); *State v. Wofford*, 34 S.W.3d 671, 679 (Tex. App.— Austin 2000, no pet.).

[14]*May v. State*, 765 S.W.2d 438, 440 (Tex. Crim. App. 1989) (op. on reh'g); *Goocher v. State*, 633 S.W.2d 860, 865 (Tex. Crim. App. [Panel Op.] 1982); *Wofford*, 34 S.W.3d at 680.

[15]*See* Tex. Penal Code Ann. § 31.03(e)(4)(F) (West Supp. 2015).

convictions.[16]  Section 1956.001 of the occupations code defines different "materials," "regulated materials," and "regulated metals":

(1)    "Aluminum material" means a product made from aluminum, an aluminum alloy, or an aluminum by-product.  The term includes aluminum wiring and an aluminum beer keg but does not include another type of aluminum can used to contain a food or beverage.

(2)    "Bronze material" means:

(A)    a cemetery vase, receptacle, or memorial made from bronze;

(B)    bronze statuary; or

(C)    material readily identifiable as bronze, including bronze wiring.

. . . .

(4)    "Copper or brass material" means:

(A)    a power inverter or insulated or noninsulated copper wire or cable that contains copper or an alloy of copper or zinc and is of the type used by:

(i)    a public utility or common carrier;

(ii)    a telecommunications provider as defined by Section 51.002, Utilities Code;

(iii)    a cable service provider as defined by Section 66.002, Utilities Code; or

(iv)    a video service provider as defined by Section 66.002, Utilities Code;

(B)    a copper or brass item of a type commonly used in

---

[16]Tex. Occ. Code Ann. § 1956.040(b)–(b-1) (West Supp. 2015).

6

construction or by:

> (i)     a public utility;

> (ii)     a telecommunications provider as defined by Section 51.002, Utilities Code;

> (iii)     a cable service provider as defined by Section 66.002, Utilities Code; or

> (iv)     a video service provider as defined by Section 66.002, Utilities Code; or

(C)     copper pipe or copper tubing.

. . . .

(6-a) "Lead material" means:

(A)     a commercial grade lead battery, lead-acid battery, or spiral cell battery; or

(B)     a material or an item readily identifiable as being made of or containing lead.

. . . .

(9)     "Regulated material" means:

(A)     aluminum material;

(B)     bronze material;

(C)     copper or brass material;

(D)     lead material; or

(E)     regulated metal.

(10)     "Regulated metal" means:

(A)     manhole covers;

(B)     guardrails;

(C)     metal cylinders designed to contain compressed air, oxygen, gases, or liquids;

(D)     beer kegs made from metal other than aluminum;

(E)     historical markers or cemetery vases, receptacles, or memorials made from metal other than aluminum;

(F)     unused rebar;

(G)     street signs;

(H)     drain gates;

(I)     safes;

(J)     communication, transmission, and service wire or cable;

(K)     condensing or evaporator coils for central heating or air conditioning units;

(L)     utility structures, including the fixtures and hardware;

(M)     aluminum or stainless steel containers designed to hold propane for fueling forklifts;

(N)     metal railroad equipment, including tie plates, signal houses, control boxes, signs, signals, traffic devices, traffic control devices, traffic control signals, switch plates, e-clips, and rail tie functions;

(O)     catalytic converters not attached to a vehicle;

(P)     fire hydrants;

(Q)     metal bleachers or other seating facilities used in recreational areas or sporting arenas;

(R)     any metal item clearly and conspicuously marked with any form of the name, initials, or logo of a governmental entity, utility, cemetery, or railroad;

(S)     insulated utility, communications, or electrical wire that has been burned in whole or in part to remove the insulation;

8

(T)     backflow valves;

(U)     metal in the form of commonly recognized products of the industrial metals recycling process, including bales, briquettes, billets, sows, ingots, pucks, and chopped or shredded metals; and

(V)     commercial grade lead batteries or lead-acid batteries.[17]

So if the person purchases and thereby possesses certain stolen metals included in the penal code section 31.03(e)(4)(F) list—aluminum, copper, bronze, and brass[18]—knowing the metal is stolen, and regardless of the amount or value, it appears that the offense is a Class A misdemeanor under the occupations code.[19]

Thus, if I knowingly go to my local fence and purchase stolen "aluminum material," I have committed a Class A misdemeanor,[20] unless, of course, either the arresting officer or the prosecutor decides to prosecute the "aluminum material" as plain aluminum.  Then, I may be charged with a state jail felony unless I buy more than $20,000 worth.[21]  If I steal a $1,400 silver coin, I have committed a Class A misdemeanor,[22] but if I pick an aluminum can up off the

---

[17] *Id.* § 1956.001.

[18] *See* Tex. Penal Code Ann. § 31.03(e)(4)(F).

[19] *See* Tex. Occ. Code Ann. §§ 1956.001(9), .040(b)–(b-1).

[20] *See id.* §§ 1956.001(9), .040(b)–(b-1).

[21] *See* Tex. Penal Code Ann. § 31.03(b)(2), (e)(4)(F).

[22] *See id.* § 31.03(e)(3).

street and someone else claims it belongs to him, I am facing a state jail felony charge,[23] unless either the arresting officer or the prosecutor decides to prosecute me based on the value of the can under section 31.03(e)(1) of the penal code, in which case theft of that same can becomes a Class C misdemeanor carrying no jail time.[24]  And what about the sandwich I take out of the office refrigerator because I'm really hungry?  If the sandwich is wrapped in aluminum foil, the theft is a state jail felony.[25]  If that same sandwich is in a plastic baggie, the theft is only a Class C misdemeanor.[26]

My confusion has many sources.  What constitutes aluminum, bronze, copper, or brass for purposes of penal code section 31.03(e)(4)(F)?  Does each term mean something made of the respective metal, alloyed with the respective metal, containing the respective metal, or decorated with the respective metal?  If I steal an automobile and some of its parts are made of aluminum, have I stolen a car, aluminum, or both?  That is, have I committed two offenses?  When a person, such as Appellee, is accused of stealing aluminum bats, is he accused of committing one offense or two?  What about copper coins?  Does the theft of

---

[23]*See id.* § 31.03(e)(4)(F).

[24]*See id.* § 31.03(e)(1).

[25]*See id.* § 31.03(e)(4)(F).

[26]*See id.* § 31.03(e)(1).

10

each coin constitute a separate offense?[27]

Most baking powders for the home and antiperspirant deodorants contain aluminum.[28] If I grab a biscuit off the buffet without paying for it, am I going to be charged with a state jail felony? How much of the object must be of the forbidden metal? More than 50%? Any amount? From the wording of the statute,[29] logic suggests that the object must be primarily made of the forbidden metal. Otherwise, why would the statute specifically enumerate aluminum, copper, brass, and bronze,[30] since brass and bronze are alloys containing copper and sometimes aluminum.[31] Indeed, bronze is an alloy consisting primarily of copper.[32] Are courts to conclude that any amount of the forbidden metal dooms the object in which it may hide? Are courts to hold that an object must contain sufficient forbidden metal that a person knows that he possesses it, as courts

_____

[27] *See Johnson v. State*, 364 S.W.3d 292, 297 (Tex. Crim. App.) ("Theft has two gravamina: the property and ownership."), *cert. denied*, 133 S. Ct. 536 (2012).

[28] *Baking Powder*, Wikipedia, The Free Encyclopedia, https://en.wikipedia.org/wiki/Baking_powder#Usage_of_aluminum_compounds (last visited July 27, 2016) (permalink at https://en.wikipedia.org/w/index.php?title=Baking_powder&oldid=707002615); *Antiperspirant Safety: Should You Sweat It?*, WebMD, http://www.webmd.com/skin-problems-and-treatments/features/antiperspirant-facts-safety (last visited July 27, 2016).

[29] *See* Tex. Penal Code Ann. § 31.03(e)(4)(F).

[30] *See id.*

[31] *Brass vs. Bronze*, Diffen, http://www.diffen.com/difference/Brass_vs_Bronze (last visited July 27, 2016).

[32] *Id.*

have held regarding controlled substances?[33]  Or is it sufficient that someone knows it?

And returning to coins, does copper plating transform a penny from zinc to copper?  Or is it a state jail felony to steal a 1981 penny but a Class C misdemeanor to steal a 1943 penny because it was made with no copper?[34]  The legislature does not inform us.  Does this mean that the police officer or the prosecutor decides this issue on an ad hoc basis?

As section 31.03 of the penal code and section 1956.040(b)–(b-1) of the occupations code currently exist, the same act may be punished as a Class C misdemeanor, a Class A misdemeanor, or a state jail felony, depending on the whim or sound judgment of the arresting officer or the prosecutor, not the legislature.  If the officer decides the offense is a Class C misdemeanor, there will likely be no arrest because the penalty carries no jail time and custodial arrest requires promptly taking the defendant before a magistrate.[35]  If the officer decides the offense is a Class A misdemeanor, the bail amount will likely be

---

[33]*See Shults v. State*, 575 S.W.2d 29, 29 (Tex. Crim. App. [Panel Op.] 1979).

[34]*Which U.S. Coin Has Absolutely No Copper in It?*, About.com, http://coins.about.com/od/uscoins/f/coin_nocopper.htm (last visited July 27, 2016).

[35]*See* Tex. Code Crim. Proc. Ann. art. 14.06(b) (West Supp. 2015) (allowing peace officer to issue citation to person charged with Class C offense instead of taking the person before a magistrate); Tex. Penal Code Ann. § 12.23 (West 2011) (providing Class C punishment is a fine up to $500); *Berrett v. State*, 152 S.W.3d 600, 606 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

lower than if the officer decides the offense is a felony.[36]   Similarly, the ultimate

punishment ranges from a tiny fine to two years' imprisonment and a large fine,

dependent on the officer's choice.[37]    And after the officer makes this

determination, the prosecutor weighs in and may make different determinations,

both the officer and the prosecutor acting within the discretion improperly

delegated them by the legislature.   This is the very definition of unbounded

discretion.

As the Texas Court of Criminal Appeals has repeatedly reminded us,

> The federal constitution affords the states broad authority to narrowly construe a statute to avoid a constitutional violation. . . . Texas courts have a duty to employ a reasonable narrowing construction for that purpose.   But . . . a narrowing construction should be employed only if the statute is readily susceptible to one. We may not rewrite a statute that is not readily subject to a narrowing construction because such a rewriting constitutes a serious invasion of the legislative domain and would sharply diminish the legislature's incentive to draft a narrowly tailored statute in the first place.

> . . . [A] law "is not susceptible to a narrowing construction when its meaning is unambiguous."  This statement accords with our

---

[36] *See Ex parte Castellanos*, 420 S.W.3d 878, 882 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("The defendant's potential sentence and the nature of the crime are significant factors for us to consider when assessing the reasonableness of a bail amount.") (citing *Montalvo v. State*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.), and *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd)).

[37] *Compare* Tex. Penal Code Ann. § 12.23 (providing that person convicted of "Class C misdemeanor shall be punished by a fine not to exceed $500"), *with* Tex. Penal Code Ann. § 12.35(a)–(b) (West Supp. 2015) (providing that person convicted of state jail felony faces up to two years' confinement in state jail and a fine of up to $10,000).

13

longstanding practice of giving effect to the plain meaning of a statute unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.  It also accords with our more recent statements that a statute is ambiguous if the statutory language "is reasonably susceptible to more than one understanding."[38]

Penal code section 31.03(e)(4)(F) is another example of special-interest legislation intended to benefit real estate developers who were tired of repeated burglaries and thefts of wiring and air conditioner parts.[39]  With the increased value of copper and aluminum, other owners of houses, apartments, and buildings were also the victims of these thefts and burglaries.[40]  In 2011, the governor signed Senate Bill 694, which removed the requirement that at least 50% of the stolen item be made of specific metals, such as copper or aluminum.[41]  The removal of this scope limitation generated many questions.

---

[38]*Ex parte Thompson*, 442 S.W.3d 325, 339–40 (Tex. Crim. App. 2014) (citations omitted).

[39]*See* Dallas Sierra Club Lone Star Chapter, *Rita Raccoon, Recycling Roundup—April 2011*, http://www.dallassierraclub.org/index.htm?c=con&s=24&sc=212311 (last visited July 27, 2016); Press Release, The Office of Tex. State Senator Royce West, Senator West Announces New State Law to Fight Metals Theft (Apr. 4, 2008), *available at* http://www.senate.state.tx.us/75r/Senate/Members/Dist23/pr08/p040408a.htm (last visited July 27, 2016).

[40]*See* Dallas Sierra Club Lone Star Chapter, *Rita Raccoon, Recycling Roundup—April 2011*; Press Release, The Office of Tex. State Senator Royce West, Senator West Announces New State Law to Fight Metals Theft (Apr. 4, 2008).

[41]*See* Act eff. Sept. 1, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Sess. Law Serv. 3309, 3310 (West) (codified at Tex. Penal Code Ann. § 31.03(e)(4)(F)).

That is, now that the legislature specifically removed this quantitative restriction from section 31.03(e)(4)(F), the statute is clearly ambiguous.

The indictment that tracks that section also creates an additional constitutional issue. The Texas Court of Criminal Appeals has repeatedly held that generally, "an indictment tracking the language of the statute will satisfy constitutional and statutory requirements; the State need not allege facts that are merely evidentiary in nature."[42] In contrast, the Texas Legislature has established a baseline for indictments requiring that "[i]f known, personal property alleged in an indictment shall be identified by name, kind, number, and ownership. When such is unknown, that fact shall be stated, and a general classification, describing and identifying the property as near as may be, shall suffice."[43]

Clearly, besides ownership, the gravamen of the theft offense under section 31.03(e)(4)(F) is theft of any amount of the forbidden metals. The indictment that tracks the statute gives no notice of the item containing or made of the forbidden metal. The prosecution is only for the theft of the forbidden metal, not the rest of the item. Nor does the indictment that tracks this statute give any notice of the identity of the item. But both the code of criminal procedure and the Texas Court of Criminal Appeals have provided that

---

[42]*State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).

[43]Tex. Code Crim. Proc. Ann. art. 21.09 (West 2009).

15

[t]he purpose of an indictment is "to give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment"; an indictment must also be specific enough to "enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."[44]

How does an indictment that tracks this vague statute give Appellee notice of the particular offense with which he is charged or enable the court to pronounce the proper judgment on conviction?  How can a court conclude that the indictment here, which does not mention the baseball bats, is sufficiently specific to "enable the accused to plead the judgment that may be given upon it in bar of any prosecution" for stealing those same baseball bats?

Because I believe that due process demands both that we uphold the trial court's decision in this specific case and that the legislature revise section 31.03(e)(4)(F) so that it provides adequate notice to citizens and law enforcement, I must respectfully dissent.

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  August 4, 2016

---

[44]*Lehman v. State,* 792 S.W.2d 82, 84 (Tex. Crim. App. 1990) (citing Tex. Code Crim. Proc. Ann. arts. 21.04, 21.11 (West 2009)).